**CONTRACT MANAGEMENT, INC., Plaintiff,**

v.

**Donald RUMSFELD, in his representative capacity as Secretary of Defense, Hector V. Barreto, Jr., in his representative capacity as Administrator of the Small Business Administration, and the United States of America, Defendants.**

**No. CIV.03–00232 HG–LEK.**

United States District Court, D. Hawai'i.

Nov. 24, 2003.

William M. Tam, Corianne W. Lau, Alston Hunt Floyd & Ing, Honolulu, HI, Timothy H. Power, Walnut Creek, CA, for Plaintiff.

Mark J. Mellett, for Defendants Rumsfeld and the U.S.A., Special Assistant U.S. Attorney, Office of the U.S. Attorney, Honolulu, HI.

Beverley Hazlewood Lewis, for Defendant Barreto, Office of General Counsel, U.S. Small Business Administration, Washington, DC.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GILLMOR, District Judge.

The instant case involves a dispute surrounding the Small Business Administration's ("SBA") interpretation of the HUBZone Program, set forth in the Small Business Act, at 15 U.S.C. § 657a, and the corresponding federal regulations. *See generally* 13 C.F.R. § 126.607; 48 C.F.R. § 19.1305. Plaintiff contends that § 657a does not authorize or require the designation of contracts to be limited to bidding by qualified HUBZone businesses and that the HUBZone regulations, specifically 48 C.F.R. § 19.1305 and 13 C.F.R. § 126.607, conflict with § 657a and are therefore invalid. Defendants respond that the HUBZone Act mandates that contracts be set aside for HUBZone businesses when certain statutory criteria are met and that the HUBZone regulations properly implement such statutory mandates.

Plaintiff filed a motion for summary judgment on all claims asserted in its Verified Complaint filed May 13, 2003. Defendants also filed a motion for summary judgment, seeking dismissal of Plaintiff's complaint with prejudice or, in the alternative, for summary judgment as to all allegations of Plaintiff's complaint.

For the reasons set forth below, the Court DENIES Plaintiff's request for summary judgment, GRANTS Defendants' request for summary judgment, and DISMISSES the action.

### PROCEDURAL HISTORY

On May 13, 2003, Plaintiff filed a Verified Complaint for Declaratory and Injunctive Relief.

Plaintiff's Ex Parte Motion to Shorten Time for Notice and Hearing on Plaintiff's Motion for Preliminary Injunction was granted on June 2, 2003.

On June 3, 2003, Plaintiff filed a Motion for Preliminary Injunction.

On June 20, 2003, Defendants filed an Opposition to Plaintiff's Motion for Preliminary Injunction. Plaintiff filed a Reply to Defendant's Opposition on June 24, 2003.

Plaintiff's motion came before the Court on June 27, 2003. At the hearing, the Court GRANTED Plaintiff's Motion for Preliminary Injunction. A written order issued on July 15, 2003.

On July 30, 2003, Plaintiff filed a Motion for Summary Judgment, a Memorandum in support of the Motion, and a Separate

and Concise Statement of Facts in support of the motion.

On July 30, 2003, Defendants filed a Motion for Summary Judgment, a Memorandum in support of the Motion, and a Separate and Concise Statement of Facts in support of the Summary Judgment Motion.

On August 18, 2003, Plaintiff filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment. Also on August 18, 2003, Defendants filed a Response to Plaintiff's Separate and Concise Statement of facts, Table of Contents, Table of Authorities and Memorandum in Support of Defendants' Opposition to Plaintiff's Motion for Summary Judgment.

On September 4, 2003, Defendants filed their Reply in Support of their Motion for Summary Judgment. Also on that date, Plaintiff filed its Reply in support of its own motion.

On September 18, 2003 this Court heard Plaintiff's arguments in support of its Motion for Summary Judgment and Defendants' arguments in support of their Motion for Summary Judgment. The Court issued a Minute Order in which it DENIED Plaintiff's Motion for Summary Judgment and GRANTED Defendants' Motion for Summary Judgment. The parties agreed that Plaintiff's contract with the Government will continue until March 31, 2004.

### FACTUAL BACKGROUND

Plaintiff is a small business which provides custodial services to the United States Naval Base and Shipyard at Pearl Harbor, Hawaii.

Plaintiff has named the following parties as Defendants: Donald Rumsfeld in his representative capacity as Secretary of Defense of the United States; Hector Barreto, Jr. in his representative capacity as Administrator of the Small Business Administration ("SBA"); and the United States of America. Plaintiff alleges that Defense Secretary Rumsfeld has violated his duty to carry out the laws of the United States with respect to his responsibility over the management of the Pearl Harbor Naval Base in Honolulu, Hawaii. Plaintiff alleges that Administrator Barreto has breached his responsibility to administer properly the SBA programs at issue in the instant case. Plaintiff has named the United States as a Defendant alleging that the sovereign nation has violated its obligation to follow its own laws.

The material facts in this case are undisputed. Plaintiff has provided custodial services at Pearl Harbor continuously for 18 years, since 1985. At the time of filing, Plaintiff held four contracts to provide custodial services at the United States Naval Base and Shipyard at Pearl Harbor. Plaintiff was awarded the contracts as small business set-asides[1] as provided for in 15 U.S.C. § 644. The contracts expired on September 30, 2003.[2]

In December 2002, the Navy, with the approval of the Small Business Administration, combined the four contracts then being performed by Plaintiff with other custodial contracts then being performed by other small businesses. The Navy combined all of these contracts into three contract bid solicitations. One of the solicitations, Solicitation No. N62742–03–R–2216, is for custodial services for 212 build-

---

1. A small business set-aside consists of the reservation of the opportunity to bid for a contract exclusively by small businesses. *See* 48 C.F.R. § 19.501(a).

2. At a September 18, 2003 hearing before this Court, the parties agreed that Plaintiff Contract Management Inc.'s contract with the Government will be extended until March 31, 2004.

ings located at the Pearl Harbor Naval Base. The solicitation includes portions of two of Plaintiff's then-existing contracts, as well as work from two other contracts that Plaintiff was not performing.

During this process, the Navy contracting officer consulted with an SBA procurement representative, reviewed the Federal Acquisition Regulations, and concluded that Solicitation No. N62742–03–R–2216 had to be designated a set-aside for HUBZone small businesses. Plaintiff does not qualify as a HUBZone small business and therefore was faced with the prospective loss of its custodial contracts with the Navy. Plaintiff, therefore, brought this case to challenge the Navy's designation—and the SBA's authorization of that designation—of Solicitation No. N62742–03–R–2216 as a HUBZone set-aside.

### LEGAL BACKGROUND

Congress enacted the Small Business Act (the "Act") to assist the interests of small businesses. 15 U.S.C. § 631(a). The Small Business Administration is charged with carrying out the policies of the Act and making rules and regulations it deems necessary to carry out the Act's purposes. 15 U.S.C. §§ 633(a) and 634(b)(6). The SBA's implementing regulations are codified at 13 C.F.R. Part 101 et seq. The Federal Acquisition Regulations ("FAR") pertaining to small business programs are codified at 48 C.F.R. Part 19.[3]

The Small Business Act allows competition and procurement awards to be limited to small businesses in certain situations. 15 U.S.C. § 644(g). The Act also provides special programs to assist particular groups of small businesses. One such program is the HUBZone program. See 15 U.S.C. § 657a.

A HUBZone is a "Historically Underutilized Business Zone" and refers to certain qualified areas. 15 U.S.C. § 632(p)(1). The purpose of the HUBZone program is to "provide Federal contracting assistance for qualified small business concerns located in historically underutilized business zones, in an effort to increase employment opportunities, investment, and economic development in those areas." 48 C.F.R. § 19.1301(b) (2000).

In order to qualify to receive a contract award under the HUBZone program, a small business must have its principal office located in a designated HUBZone and no fewer than 35 percent of its employees must reside in HUBZone areas. 15 U.S.C. § 632(p)(5)(A); 13 C.F.R. §§ 126.103, 126.200. A small business that is qualified under the HUBZone program can receive contracting preferences, such as set-aside awards[4] based on competition. 15 U.S.C. § 657a(b); 13 C.F.R. § 126.600; 48 C.F.R. § 19.1305–1307.

Another special program under the Small Business Act is the 8(a) Program, named after Section 8(a) of the Act. The purpose of the 8(a) Program is to increase federal contracts awarded to small businesses owned by socially and economically

---

**3.** The Federal Acquisition Regulations System ("FAR") contains the uniform policies and procedures for acquisition of supplies and services by all executive agencies. See Davies Precision Machining, Inc. v. United States, 35 Fed. Cl. 651, 657 (Fed.Cl.1996). The FAR is issued and maintained jointly under the statutory authorities granted to the Secretary of Defense, Administrator of General Services and the Administrator of the National Aeronautics and Space Administration. See Authority of the FAR, at http://www.ar-net.gov/far/authorityframe.html (last visited November 18, 2003).

**4.** Set-asides in the context of the HUBZone Program consist of the designation of contracts for bidding limited to qualified HUBZone businesses.

disadvantaged individuals. 15 U.S.C. § 637(a).

Under the 8(a) program, a contracting officer awards a contract to the SBA. 15 U.S.C. § 637(a)(1)(A). The SBA then awards a subcontract to a small business owned by socially and economically disadvantaged individual(s). 15 U.S.C. § 637(a)(1)(B).

## STANDARDS OF REVIEW

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any evidence at all on matters for which it does not have the burden of proof. *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met simply by pointing out that there is an absence of evidence to support the nonmovant's case. *Id.*

If the moving party meets its burden, then the non-movant must present admissible evidence showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir.1995). The opposing party may not defeat a motion for summary judgment in the absence of significant probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. Fed. R.Civ.P. 56(e); *T.W. Elec. Serv.*, 809 F.2d at 630. Rather, the opposing party must direct the court to specific, triable facts. Fed.R.Civ.P. 56(e). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery and matters judicially noticed. Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

Summary judgment for the defendant is appropriate when the plaintiff fails to make a sufficient showing to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial. In ruling on a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin*, 872 F.2d 319, 320 (9th Cir.1989).

### B. Standard of Review of Administrative Agency Decisions

#### 1. Judicial review of agency decisions

The Administrative Procedure Act ("APA"), codified at 5 U.S.C. § 704, provides the standard for judicial review of federal administrative agency decisions, including decisions regarding the award of government contracts. *See, e.g., Iceland S.S. Co., Ltd.-Eimskip v. United States Dept. of Army*, 201 F.3d 451, 453 (D.C.Cir. 2000) (noting that disappointed bidders may challenge a government contract award under the APA). In accordance with the APA, judicial review generally is confined to evaluating whether agency ac-

tion is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *United States v. Bean*, 537 U.S. 71, 77, 123 S.Ct. 584, 154 L.Ed.2d 483 (2002); *Forest Guardians v. U.S. Forest Service*, 329 F.3d 1089, 1097 (9th Cir.2003).

■ The arbitrary or capricious standard is a narrow one; a reviewing court may not substitute its own judgment for that of the agency. *See U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 6–7, 122 S.Ct. 431, 151 L.Ed.2d 323 (2001); *Environmental Def. Ctr., Inc. v. U.S. E.P.A.*, 344 F.3d 832, 858 n. 36 (9th Cir.2003). The agency, however, must articulate a rational connection between the facts found and the conclusions made. *See Environmental Def. Ctr. Inc.*, 344 F.3d at 858 n. 36. The reviewing court must determine whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989); *Environmental Def. Ctr., Inc.*, 344 F.3d at 858 n. 36.

A court's review of whether an agency action was arbitrary or capricious generally is limited to review of the administrative record. *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 419–21, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) ("In applying [the arbitrary and capricious] standard, the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court."). When a court finds that the agency's decision was not supported by the administrative record, "the proper course, except in rare circumstances, is to remand [the case] to the agency for additional investigation or explanation." *He v. Ashcroft*, 328 F.3d 593, 603 (9th Cir.2003) (quoting *I.N.S. v. Ventu-*

*ra*, 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002)).

### 2. Judicial review of an agency's construction of a statute it is charged with administering

■ An agency's interpretation or application of a statute is a question of law reviewed de novo. *See Vernazza v. S.E.C.*, 327 F.3d 851, 858 (9th Cir.), *amended by* 335 F.3d 1096 (9th Cir.2003); *Brower v. Evans*, 257 F.3d 1058, 1065 (9th Cir.2001).

■ The standard for reviewing any agency decision that involves statutory interpretation is narrower than the arbitrary and capricious standard set forth under the APA. In reviewing an agency's construction of the statute it is charged with administering, courts apply a two-part test. First, the reviewing court must determine whether Congress has spoken directly to the precise question at issue. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (footnote omitted).

If the court determines that Congress has not directly addressed the precise question at issue, either through silence or an ambiguous treatment of the issue, the court must apply the second part of the test and determine whether the agency's interpretation is based on a permissible construction of the statute. *Id.* at 843, 104 S.Ct. 2778; *see Espejo v. I.N.S.*, 311 F.3d 976, 978 (9th Cir.2002). Courts must defer to an agency's construction of a statute the agency is charged with administering unless the agency's interpretation is contrary to clear congressional intent or frustrates the policy Congress sought to implement.

*Biodiversity Legal Foundation v. Badgley,* 309 F.3d 1166, 1175 (9th Cir.2002).

## ANALYSIS

### I. Plaintiff's Motion for Summary Judgment

The Court is faced with the following issues:

1. whether Congress has indicated its intent regarding the mandatory or discretionary nature of the HUBZone set-asides as provided for in 15 U.S.C. § 657a;

2. whether the SBA and FAR regulations mandating HUBZone set-asides are inconsistent with congressional intent;

3. whether 15 U.S.C. § 657a limits HUBZone set-asides to new contracts that must be performed in designated HUBZone areas; and

4. whether the Navy's decision to set aside Solicitation No. N62742–03–R–2216 was arbitrary, capricious, or an abuse of discretion.

The Court will address each issue and the relevant, corresponding arguments separately.

**A. The language in 15 U.S.C. § 657a indicates that Congress intended to mandate HUBZone set-asides when certain statutory criteria are met**

The dispute in this case revolves around the interpretation of the HUBZone Program, codified in the Small Business Act at 15 U.S.C. § 657a, as implemented by the SBA and FAR regulations at 13 C.F.R. § 126.607 and 48 C.F.R. § 19.1305, respectively. The statutory provision at issue, 15 U.S.C. § 657a(b)(2), provides:

> "Notwithstanding any other provision of law... (B) a contract opportunity *shall be awarded* pursuant to this section on the basis of competition restricted to qualified HUBZone small business concerns if the contracting officer has a

reasonable expectation that not less than 2 qualified HUBZone small business concerns will submit offers and that the award can be made at a fair market price;"

*Id.* (emphasis added).

The Small Business Act created the Small Business Administration to carry out the policies outlined therein. *See* 15 U.S.C. § 633. In fulfilling its statutory mandate, the SBA interpreted § 657a(b)(2) to mandate HUBZone set-asides when specified criteria are met. The SBA regulations provide:

> When must a contracting officer set aside a requirement for qualified HUBZone SBCs? ...
>
> (c) ... the contracting officer *must set aside the requirement for competition restricted to qualified HUBZone SBCs* if the contracting officer:
>
> > (1) Has a reasonable expectation, after reviewing SBA's list of qualified HUBZone SBCs that at least two responsible qualified HUBZone SBCs will submit offers; and
> >
> > (2) Determines that award can be made at fair market price.

13 C.F.R. § 126.607 (emphasis added).

The Federal Acquisition Regulations System (FAR) is issued and maintained jointly under the statutory authorities granted to the Secretary of Defense, the Administrator of General Services, and the Administrator of the National Aeronautics and Space Administration. The FAR pertaining to small business programs also interpret § 657a(b)(2) as mandating HUBZone set-asides when specified criteria are met. The relevant FAR provisions state:

> (a) A participating agency contracting officer *shall set aside acquisitions* exceeding the simplified acquisition threshold for competition restricted to

HUBZone small business concerns when the requirements of paragraph (b) of this section can be satisfied. The contracting officer shall consider HUBZone set-asides before considering HUBZone sole source awards . . . or small business set-asides. . . .

(b) To set aside an acquisition for competition restricted to HUBZone small business concerns, the contracting officer must have a reasonable expectation that-

(1) Offers will be received from two or more HUBZone small business concerns; and

(2) Award will be made at a fair market price.

48 C.F.R. § 19.1305(a)-(b) (emphasis added).

■ It is well settled that a court reviewing an agency's construction of the statute the same agency is charged with administering must first determine whether Congress has spoken directly to the precise question at issue. *Chevron*, 467 U.S. at 842, 104 S.Ct. 2778. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778. If this Court determines that Congress has not directly addressed the issue of whether HUBZone set-asides are mandatory or discretionary, either through silence or ambiguous language, this Court must apply the second part of the *Chevron* test and determine whether the regulatory interpretation of the HUBZone Program is based on a "permissible construction" of § 657a. *Id.* at 843, 104 S.Ct. 2778. Although this Court must reject any administrative construction that is contrary to Congress's clear intent, it need not find the relevant agency interpretation to be the only one permissible, nor is this Court required to find the interpretation to be the reading it would

have reached if the question initially had arisen in a judicial proceeding. *Id.* (citations omitted).

In the instant case, Congress has used clear language to mandate, "notwithstanding any other provision of law," the award of contract opportunities on the basis of competition restricted to qualified HUBZone small business concerns when certain, specific criteria are met. Congress has therefore addressed directly the precise question at issue, requiring both the SBA and this Court "to give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778.

The SBA and FAR regulations implement Congress's unambiguously expressed intent by mandating that participating agencies set aside contract opportunities to qualified HUBZone small business concerns when the statutory criteria are met.

**B. The SBA and FAR regulations implementing the HUBZone Program are permissible agency interpretations of § 657a**

Plaintiff asserts that Congress did not intend for the HUBZone Program to mandate HUBZone set-asides and urges the Court to consider the HUBZone Program in the broader context of the Small Business Act and in light of the language Congress used in outlining the provisions of the 8(a) Program. Even if this Court did not find that Congress, in § 657a, has clearly and unambiguously expressed its intent to mandate HUBZone set-asides under specified circumstances, the proper course of action for this Court would be to apply the second part of the *Chevron* test to determine whether the SBA and FAR regulations implementing the HUBZone Program constitute a permissible interpretation of the statute. *Chevron*, 467 U.S. at 843, 104 S.Ct. 2778; *O'Connell v. Shalala*, 79 F.3d 170, 175–76 (1st Cir.1996) (discuss-

ing the importance of examining a statute as a whole, but noting the requirement, under *Chevron,* to defer to "an agency's plausible construction of a silent or ambiguous statute as long as Congress has committed the statute to the agency for the purposes of administration . . . .").

This Court need not find the regulatory interpretation of § 657a to be "the reading [this Court] would have reached if the question initially had arisen in a judicial proceeding." *Chevron,* 467 U.S. at 843, n. 11, 104 S.Ct. 2778. The Court is obligated to reject only those administrative constructions "which are contrary to clear congressional intent." *Id.* at 843 n. 9, 104 S.Ct. 2778.

Plaintiff contends that the SBA and FAR regulations mandating HUBZone set-asides constitute an impermissible construction of § 657a. In support of this contention, Plaintiff offers the following arguments:

1.  Mandatory HUBZone set-asides conflict with the broader goals of the encompassing Small Business Act;
2.  The HUBZone Program, codified at 15 U.S.C. § 657a, contains language similar to that used in the 8(a) Program, codified at 15 U.S.C. § 637(a), and the two provisions should be read as having the same meaning; and
3.  Congress specifically stated that HUBZone set-asides were not to be given preference over 8(a) set-asides.

The following sections will address each of these arguments in turn.

**1. Mandatory HUBZone set-asides do not frustrate the overarching goals of the Small Business Act**

■ The purpose of the Small Business Act is articulated in Section 2(a) of the Act. "It is the declared policy of the Congress that the Government should . . . insure that a fair proportion of the total purchases and contracts or subcontracts for property and services for the Government . . . be placed with small-business enterprises . . . ." 15 U.S.C. § 631(a). The SBA and FAR regulations' interpretation of the HUBZone Program as mandating set-asides to qualified HUBZone businesses does not thwart the policy underlying the Small Business Act as the HUBZone set-asides benefit small businesses, albeit a narrow group of small businesses that does not include Plaintiff. *See* 48 C.F.R. § 19.1301(b) (explaining that the purpose of the HUBZone Program is to provide federal contracting assistance to qualified small business concerns located in historically underutilized business zones).

Plaintiff calls particular attention to the fact that the legislation containing the HUBZone Program also contains congressional goals for small businesses' participation in the overall assignment of federal government contract awards. The statute raised the goal for the overall small business share in federal contract awards from the prior goal of 20 percent to 23 percent and, in codifying the HUBZone Program, set the target for HUBZone small businesses at 3 percent of the total value of federal contract awards. *See* 15 U.S.C. § 644(g).

Interpreting HUBZone set-asides as mandatory is not inconsistent with setting lower targets for HUBZone businesses than for other classifications of small businesses, including the general grouping of all small businesses. First, the goals set forth in § 644(g) are minimum targets rather than caps. Perhaps more importantly, the target of 23 percent for the overall small business share in federal contract awards incorporates the various subgroups of small businesses, including HUBZone small businesses. The award of contracts to HUBZone small businesses,

therefore, aids in the realization of the 23 percent goal for all small businesses.

It is also significant that since the inception of the HUBZone Program, the minimum target of 3 percent of the total federal contract awards for HUBZone small businesses has not yet been achieved. *See* Trans. of Hearing re Plaintiff's Motion for Preliminary Injunction (June 27, 2003), at 30, lines 18–19 (attorney for Defendants proffering that less than 1 percent of federal contract awards are going to HUBZone companies). If the HUBZone Program becomes so successful that it threatens the ability of other small businesses to meet their goals, Congress is free to amend the statute.

The Court therefore finds that the regulatory interpretation of the HUBZone Program as mandating set-asides to HUBZone small businesses when the statutory criteria are met does not frustrate the broad policies underlying the Small Business Act.

### 2. The HUBZone set-aside provisions are distinct from the set-aside provisions in the 8(a) Program

■ Both 15 U.S.C. § 657a, the statute outlining the HUBZone Program, and 15 U.S.C. § 637(a), the statute outlining the 8(a) Program, use the word "shall" in describing the awarding of contracts pursuant to the respective programs. Section 657a provides that "a contract opportunity *shall be awarded pursuant to this section* on the basis of competition restricted to qualified HUBZone small business concerns ...." 15 U.S.C. § 657a(b)(2)(B) (emphasis added). Section 637(a) contrastingly provides that "... [a] *contract opportunity offered for award pursuant to this subsection shall* be awarded on the basis of competition restricted to eligible Program Participants ...." 15 U.S.C. 637(a)(1)(D)(i) (emphasis added). Section 657a mandates that certain contracting

opportunities be set aside for competition restricted to HUBZone small businesses, whereas section 637(a) mandates the competition of contractors that meet certain criteria under the 8(a) Program, but leaves to agency discretion the initial offer and acceptance of contracts into the 8(a) Program. Although the language used in describing the two programs is similar, in the case of § 657a, Congress has used the term "shall" to mandate that certain contracting opportunities be set aside for competition restricted to HUBZone small businesses. With regard to the 8(a) Program as set forth in § 637(a), Congress has used the same term to mandate the competition of contractors that meet certain criteria, while leaving to agency discretion the initial offer and acceptance of contracts into the 8(a) Program. The Court therefore finds that the discretionary nature of the 8(a) Program does not render invalid regulations construing the HUBZone Program as mandatory.

### 3. Mandatory HUBZone set-asides do not frustrate Congress's objective of preventing competition between the HUBZone and 8(a) programs

■ Plaintiff argues that HUBZone set-asides were not intended by Congress to take precedence over the 8(a) set-asides. *See* S.Rep. No. 106–422, at 24 (2000). The HUBZone regulations prevent the mandatory status of HUBZone set-asides from affecting the 8(a) program. Specifically, the SBA regulations provide:

A contracting activity may not make a requirement available for a HUBZone contract if: ... (b) An 8(a) participant currently is performing that requirement or SBA has accepted that requirement for performance under the authority of the section 8(a) program, unless SBA has consented to release of the

requirement from the section 8(a) program ....

13 C.F.R. § 126.605.

The FAR regulations similarly exclude "[r]equirements currently being performed by an 8(a) participant or requirements SBA has accepted for performance under the authority of the 8(a) Program, unless SBA has consented to release the requirements from the 8(a) Program ...." 48 C.F.R. § 19.1304(d).

Plaintiff contends that the SBA cannot read the HUBZone preference as a statutory mandate while simultaneously promulgating regulations that limit the scope of that preference as a means to resolve the Congressional objective of parity between the HUBZone and 8(a) provisions. *Chevron* counsels deference to administrative interpretations

> whenever [a] decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting matters subjected to agency regulations.... 'If this choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned.'

*Chevron*, 467 U.S. at 844–45, 104 S.Ct. 2778 (quoting *U.S. v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961)) (internal citations omitted).

Although the SBA's resolution of the conflict between the Congressional objective of parity between the 8(a) and HUBZone programs, on the one hand, and the man-

datory status of HUBZone set-asides, on the other, appears to be one that Congress would have sanctioned, this Court need not speculate. As Defendants point out, the Small Business Act is re-authorized every three years, the most recent re-authorization having occurred in 2000. Pub.L. 106–554, 114 Stat. 2763 (2000). The final HUBZone regulations were published in June 1998. Congress, therefore, has been placed on notice that the SBA regulations establish parity between the 8(a) and HUBZone programs, and has not acted to modify the language of the statute.[5] "[A] consistent administrative interpretation of a statute, shown clearly to have been brought to the attention of Congress and not changed by it, is almost conclusive evidence that the interpretation has congressional approval." *J.H. Rutter Rex Manuf. Co., Inc. v. United States*, 706 F.2d 702, 711 (5th Cir.1983) (quoting *Kay v. Federal Communications Commission*, 443 F.2d 638, 646–47 (D.C.Cir.1970)); *see also United States v. Rutherford*, 442 U.S. 544, 553–554, 99 S.Ct. 2470, 61 L.Ed.2d 68 (1979); *Red Lion Broadcasting Co. v. Federal Communications Commission*, 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371 (1969).

This Court concludes that the SBA and FAR regulations pertaining to the HUBZone Program sufficiently promote the congressional objective of parity between the HUBZone and 8(a) programs.

**C. The HUBZone statute does not limit the HUBZone Program to new contracts, nor does it require that HUBZone contracts be performed in a HUBZone area**

■ This Court is aware of no legal support for Plaintiff's contention that Con-

5. In further support of their contention that Congress had notice of the SBA's regulation of parity between the HUBZone and 8(a) programs, Defendants reference Senator Christo-

pher Bond's July 2001 inquiry into the state of the law regarding eligibility for HUBZone and 8(a) programs. (Defendants' Exhibit A.)

gress did not intend the HUBZone Program to replace existing contractors with HUBZone residents. The statute could have limited the HUBZone program to new contracts, but did not do so.

Nor does § 657a expressly or implicitly require that contracts set aside under the HUBZone program be performed within a HUBZone. Regardless of where the contract is performed, the express statutory requirement that a HUBZone business be principally based in a HUBZone ensures that HUBZone areas derive benefits from HUBZone contracts. By contrast, the fact that "Historically Underutilized Business Zones" are, as the name implies, historically underutilized, would render a requirement that contracts be performed in HUBZones illogical and extremely limiting. Although, as Plaintiff notes, the 1999 and 2000 amendments to the provisions codifying the HUBZone Program impose a geographic restriction, they do so exclusively with respect to Indian Reservations. An Indian Reservation, by statute, automatically qualifies as a HUBZone area. 15 U.S.C. § 632(p)(1)(C). Unlike the other targeted areas, Indian Reservations are included without regard to economic need. Congress imposed geographical restrictions on Indian Reservations to prevent a Tribe from "purchas[ing] ... land in a prosperous area, hav[ing] it placed into trust status, and hav[ing] it deemed a HUBZone." S.Rep. No. 106–422, at 44 (2000). The Court does not find the geographical restriction contained in the provisions specifically addressing Indian Reservations to impose a broad geographical restriction on all contracts set aside pursuant to the HUBZone Program.

**D. The Navy's decision to set aside Solicitation No. N62742–03–R–2216 was neither arbitrary, capricious, nor an abuse of discretion**

■ The Administrative Procedure Act provides for judicial review to determine whether agency decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Bean,* 537 U.S. at 77, 123 S.Ct. 584; *Forest Guardians,* 329 F.3d at 1097. In applying the arbitrary or capricious standard, a reviewing court may not substitute its own judgment for that of the agency. *See Gregory,* 534 U.S. at 6–7, 122 S.Ct. 431; *Environmental Def. Ctr.,* 344 F.3d at 858 n. 36.

The arbitrary or capricious standard is not applicable to the Navy's conduct in the instant case. As Plaintiff concedes in its Opposition to Defendants' Motion for Summary Judgment, the Navy contracting officer did not exercise any discretion in awarding Solicitation No. N62742–03–R–2216 as a HUBZone set-aside. (Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 1.) The Navy contracting officer instead consulted the appropriate regulations and "carried out a legal duty she believed was required by law." (*Id.*) Having concluded that the regulations themselves are a permissible construction of the statutory provisions outlining the HUBZone Program, this Court finds that the Navy contracting officer's consultation and implementation of such regulations were not arbitrary, capricious, an abuse of discretion, or otherwise in discord with the law.

**E. Plaintiff's request for summary judgment is DENIED**

Having determined that the statute in question is clear and unambiguous, that the SBA's interpretation of the HUBZone statute through the HUBZone and SBA regulations is permissible, and that the contract in question was properly included as a HUBZone contract, Plaintiff's request for summary judgment is DENIED.

## II. Defendants' Motion for Summary Judgment

Defendants ask this Court to dismiss Plaintiff's Complaint with prejudice or, in the alternative, for summary judgment in their favor as to all allegations of Plaintiff's complaint. Having determined that the statute in question is clear and unambiguous, that the SBA's interpretation of the HUBZone statute through the HUBZone and SBA regulations is permissible, Defendants' request for summary judgment is GRANTED with regard to all allegations contained in Plaintiff's complaint.

### CONCLUSION

In accordance with the foregoing, the Court

(1) DENIES Plaintiff's Motion for Summary Judgment and

(2) GRANTS Defendants' Motion for Summary Judgment.

As no claims remain, the case is DISMISSED.

IT IS SO ORDERED.