# United States Court of Appeals
# for the Federal Circuit

---

**DGR ASSOCIATES, INC.,**
*Plaintiff-Appellee,*

v.

**UNITED STATES,**
*Defendant-Appellant,*

**and**

**GENERAL TRADES & SERVICES, INC.,**
*Defendant.*

---

2011-5080

---

Appeal from the United States Court of Federal Claims in case no. 10-CV-396, Judge Thomas C. Wheeler.

---

Decided: August 2, 2012

---

DARCY V. HENNESSY, Hennessy, Boe & Gondring, P.A., of Mission, Kansas, argued for plaintiff-appellee. With her on the brief was LESLIE A. BOE.

STEVEN M. MAGER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were TONY WEST, Assis-

tant Attorney General, JEANNE E. DAVIDSON, Director, and PATRICIA M. MCCARTHY, Assistant Director.

———————————————

Before RADER, *Chief Judge*, PLAGER, and WALLACH, *Circuit Judges*.

PLAGER, *Circuit Judge*.

This case involves a dispute over whether a party who prevailed in a bid protest against the United States is entitled to an award of attorneys' fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. The Court of Federal Claims determined that the Government's position in the underlying bid protest was not substantially justified, and awarded attorneys' fees, costs, and expenses.[1] However, given the then-existing disagreement among all three branches of the Federal Government over the law applicable to this bid protest, we conclude that the Court of Federal Claims erred in finding that the United States' position was not substantially justified, and accordingly reverse.

## I. The Bid Protest Case

To understand the issues in the litigation over the EAJA award, it is necessary first to understand the issues in the original bid protest litigation.[2] The relevant facts are set forth at length in the Court of Federal Claims' bid protest opinion, *DGR*, 94 Fed. Cl. at 193-199, and need not be repeated here. For purposes of this attorneys' fee dispute, a brief summary will suffice.

———————————————

[1]    *DGR Assocs. Inc. v. United States*, 97 Fed. Cl. 214 (2011) ("EAJA opinion").
[2]    *DGR Assocs., Inc. v. United States*, 94 Fed. Cl. 189 (2010) ("bid protest opinion").

## A.  Legal and Regulatory Background

The Small Business Act ("the Act") establishes various programs that assist qualifying small businesses in obtaining Federal contracts, and sets forth the requirements incident thereto.   15 U.S.C. §§ 631-657. Two of the programs are involved in this case:  the so-called Section 8(a) Program (§ 637(a)(1)(B)), which assists small businesses owned and controlled by socially and economically disadvantaged individuals, and the HUBZone Program (§ 657(a)), which assists small businesses that are located in historically underutilized business zones.   Among its requirements, the Act mandates that each Government agency establish annual contracting goals for the various small business programs created by the Act, including these two.  *Id.* § 644(g)(1).

The Small Business Administration ("SBA") is charged with carrying out the requirements of the Act and issuing such rules and regulations as it deems necessary. *Id.* §§ 633(a), 634(b).  In its regulations the SBA decreed that there should be "parity" between the 8(a) and HUBZone programs.  By so decreeing, the SBA gave the Federal agencies' contracting officers substantial discretion to consider and designate contracts for either program without having to prioritize one program over the other.  *See, e.g.*, 13 C.F.R. §§ 124.503(j), 125.18, 126.605, 126.607.  Whether this parity policy is consistent with the terms of the Act itself lies at the heart of the dispute in this case.

## B.  Factual Background

In December 2009, the Air Force solicited bids for a service contract for Eielson Air Force Base in Alaska. Appellee DGR had previously performed the requested services pursuant to a contract that expired that year. Because the Air Force had not yet satisfied its contracting

goal under the 8(a) program for fiscal year 2009, the Air Force announced that it would award the contract pursuant to a section 8(a) competition.

DGR however requested that the Air Force instead set aside the contract for qualified HUBZone small business concerns rather than for 8(a) program participants. In support of its position, DGR cited a decision from the Government Accountability Office ("GAO"), *Mission Critical Solutions*, B-401057, 2009 CPD ¶ 9 (Comp. Gen. May 4, 2009), which concluded that the Small Business Act gave priority to the HUBZone program over the 8(a) program. (The GAO is an administrative arm of the Congress assigned various missions, including a role in the bid protest process.)

The Air Force nevertheless declined DGR's request, citing in opposition to the GAO ruling an August 2009 memorandum from the Department of Justice ("DOJ memorandum") that was issued in reaction to the GAO's *Mission Critical* decision. The DOJ memorandum reviewed the Act, the SBA's parity regulations, and the GAO decision, and concluded that the Act does not compel prioritization of the HUBZone program over the 8(a) program; that SBA's parity regulations are based on a permissible interpretation of the Act; and that the GAO decision is not binding on Executive Branch agencies while the DOJ memorandum is.

DGR then filed a formal agency-level protest, which the Air Force in due course denied. In its denial the Air Force, in addition to referencing the DOJ memorandum, also cited a July 2009 memorandum from the Office of Management and Budget ("OMB memorandum") that was issued also in reaction to the GAO's *Mission Critical* decision and which directed Executive Branch agencies to continue to follow SBA's parity regulations.

Pursuant to the established appeal procedures, DGR next filed its protest with the GAO; not surprisingly the protest was sustained by the GAO despite the contrary Department of Justice and OMB directives. *DGR Assocs. Inc.*, B-402494, 2010 CPD ¶ 115 (Comp. Gen. May 14, 2010). The GAO confirmed the interpretation it had reached in *Mission Critical* that the terms of the statute specifically prioritized the HUBZone program over the 8(a) program. The GAO further noted that the Court of Federal Claims had affirmed that interpretation in *Mission Critical Solutions v. United States*, 91 Fed. Cl. 386 (2010). The Air Force was told to rebid the contract consistent with the GAO reading of the Act.

However, again not surprisingly, the Air Force declined to comply with the GAO's conclusion, citing the OMB and DOJ memoranda and, in addition, a May 2010 memorandum from the Department of Defense ("DOD memorandum") instructing that the OMB memorandum continues to reflect Executive Branch policy. The Air Force further cited a March 2010 Department of Justice memorandum, which concluded that the Court of Federal Claims' decision in *Mission Critical* applied only to the specific contract at issue in that case and not to the operation of SBA's parity rules more generally.

The Air Force subsequently awarded the competitive 8(a) contract to General Trades & Services, Inc, after which DGR timely filed suit in the Court of Federal Claims protesting the bid award and seeking to invalidate the award.

Before the Court of Federal Claims, the Government presented two arguments in response to DGR's suit: (1) as a jurisdictional matter, DGR waived its right to bring suit by not filing its court action prior to the closing date for receipt of proposals; and (2) on the merits, the statute did

not require the Air Force to prioritize the HUBZone program over the 8(a) program.

The trial court rejected the Government's jurisdictional argument, noting that it was "directly at odds with government policy to seek resolution of protests within the agency." *DGR*, 94 Fed. Cl. at 203. Regarding the Government's merits argument, the court saw "no need to modify the detailed, analytical and persuasive reasoning of the Chief Judge" in the *Mission Critical* case, and affirmed the conclusion that the Act itself gave priority to the HUBZone program over the 8(a) program. *Id.* at 205. Accordingly, the court upheld DGR's bid protest, thus invalidating the contract award to General Trades & Services; the trial court subsequently awarded attorneys' fees and costs under the EAJA to DGR. Although it does not affect the issues in this case, not long after, Congress abrogated the Court of Federal Claims' merits decisions in *DGR* and *Mission Critical* by amending the Small Business Act to clarify that the HUBZone program does not take priority over the 8(a) program. Pub. L. No. 111-240, 124 Stat. 2504 (Sept. 27, 2010).

## II. The Attorneys' Fees Issue—The Case Before Us

### A. Legal Background

The EAJA provides that, when a timely application is filed, an eligible prevailing party shall be awarded attorneys' fees and other expenses incurred by that party in any civil action brought by or against the United States "unless the court finds that the position of the United States was substantially justified . . . ." 28 U.S.C. § 2412(d)(1)(A). The purpose of the Act is to ensure that litigants "will not be deterred from seeking review of, or defending against, unjustified governmental action

because of the expense involved." *Scarborough v. Principi*, 541 U.S. 401, 407 (2004).

## B. Factual Background

DGR timely filed its application for attorneys' fees and costs under the EAJA based on its successful bid protest against the Air Force in the Court of Federal Claims. *DGR*, 97 Fed. Cl. at 217. As noted, that court ruled that DGR was entitled to attorneys' fees and associated costs because the Government's position in the bid protest was not substantially justified. *Id.* at 217-20. Specifically, the court held that the Government's jurisdictional argument "was patently unreasonable, and not substantially justified," and that the Government's merits-based argument also "was not reasonable" in view of the "unambiguous wording of the statute, and the existing case law precedent." *Id.* at 219. The court awarded DGR $37,227.72 in attorneys' fees, costs, and expenses, comprised of attorneys' fees for 210 hours at an hourly rate of $175 based on a cost of living adjustment, and $477.72 in costs and expenses. *Id.* at 220-21. The Government appeals the award. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

We review an award of attorneys' fees and expenses under the EAJA for abuse of discretion. *Pierce v. Underwood*, 487 U.S. 522, 558 (1988). To constitute an abuse of discretion, a court must either make a clear error of judgment in weighing relevant factors or exercise discretion based upon an error of law. *Sciele Pharma Inc. v. Lupin Ltd.*, No. 2012-1288, 2012 WL 2520908, at *3 (Fed. Cir. July 2, 2012).

The sole issue on appeal is whether the Government's position in the underlying bid protest litigation was

substantially justified. A position is substantially justified if it is "justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565. The Government's "position" includes both the underlying agency action that gave rise to the civil litigation and the arguments made during the litigation itself. 28 U.S.C. § 2412(d)(1)(B), (2)(D); *Comm'r, INS v. Jean*, 496 U.S. 154, 161-62 (1990); *Patrick v. Shinseki*, 668 F.3d 1325, 1330 (Fed. Cir. 2011). We address the Government's positions at each stage of these proceedings.

## I. Agency Action

The Court of Federal Claims' EAJA opinion does not discuss the Air Force's actions at the agency level so we do not have the benefit of the court's view. It is perhaps not unreasonable to infer, consistent with that court's overall position, that it found the Government's actions not substantially justified during that stage of the proceedings as well.

On appeal, DGR supports that position with its argument that, because the SBA's parity regulations were contrary to the plain language of the Act, it was unlawful for the Air Force to apply those regulations. We cannot agree. In the first place, substantive regulations governing an agency's activities have the "force and effect of law" and are binding not only on parties outside the agency, but also bind the agency itself. *Coal. for Common Sense in Gov't Procurement v. Sec'y of Veterans Affairs*, 464 F.3d 1306, 1317 (Fed. Cir. 2006). Indeed, it is a "well-established legal principle that a federal agency must comply with its own regulations." *Army & Air Force Exch. Serv. v. Sheehan*, 456 U.S. 728, 733 (1982).

The SBA's parity regulations, which had been in effect since 1998 and that placed the HUBZone and 8(a) programs on an equal footing, were fully applicable to the

Air Force and mandated the Air Force to proceed consistent with those regulations unless and until they were declared invalid by a court of competent jurisdiction. When a District Court having such authority was confronted with the potential conflict between a previous version of the SBA's parity regulations and an argument that the Act's language gave priority to the HUBZone program, the court declined to invalidate the parity regulations. *Contract Mgmt., Inc. v. Rumsfeld*, 291 F. Supp. 2d 1166, 1176-77 (D. Haw. 2003), *aff'd on other grounds*, 434 F.3d 1145, 1148 (9th Cir. 2006) (noting that although the plaintiff had challenged the SBA's parity regulations in the district court, it did not do so on appeal). And although the subsequent decisions from the GAO and the Court of Federal Claims took positions against the validity of the SBA's parity regulations, neither has the authority to invalidate properly-promulgated regulations of an Executive Branch agency. *See* 31 U.S.C. §§ 3551-3556 (establishing GAO jurisdiction over bid protests); *Lion Raisins, Inc. v. United States*, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005) (noting "no APA review is available in the Court of Federal Claims").

The Air Force was bound by the DOJ, OMB, and DOD memoranda instructing Executive Branch agencies to continue to comply with the SBA's parity regulations notwithstanding the GAO and Court of Federal Claims' contrary positions. In view of the Air Force's legal obligation to place the HUBZone and 8(a) programs on an equal footing during the procurement phase of these proceedings, we conclude that the Government's position in support of the Air Force's actions were substantially justified at the agency level.

## II. The Litigation

The next question then is whether the United States was substantially justified in defending in court the Air Force's decision to comply with those regulations. As earlier noted, the Government presented both a jurisdictional argument and a merits-based argument during the litigation phase of this case. We first address the Government's main argument on the merits of whether the Small Business Act gives priority to the HUBZone program over the 8(a) program, and then turn to the Government's subsidiary jurisdictional argument.

### A. The Government's Merits-Based Argument

In the underlying bid protest, the Government argued that the Small Business Act and the SBA's implementing regulations did not require the Air Force to give priority to HUBZone small business concerns. *DGR*, 97 Fed. Cl. at 218. The Court of Federal Claims rejected the Government's position because in the court's view the Government's interpretation of the Act "contradicted the plain meaning of the Small Business Act." *Id.* at 219. In the subsequent EAJA action, the Government argued that its position in the bid protest litigation nevertheless was substantially justified because "interpretation of the statute was a novel issue . . . ." *Id.* The Court of Federal Claims rejected the Government's justification argument, holding that "the unambiguous wording of the statute, and the existing case law precedent" rendered the Government's merits-based argument in the underlying litigation "not reasonable." *Id.*

We cannot agree. While the Government's position must be "more than merely undeserving of sanctions for frivolousness," it is sufficient for purposes of establishing substantial justification that there was a "genuine dispute" such that "reasonable people could differ as to

[the appropriateness of the contested action]." *Pierce*, 487 U.S. at 565-66 (alteration in original) (citation omitted). At the time DGR initiated the underlying bid protest, presumptively reasonable people in all three branches of the Government had reached differing conclusions as to whether the Small Business Act permitted participating agencies to place the HUBZone and 8(a) programs on an equal footing.

Of the various Government agencies to opine on the matter, the Small Business Administration, the Department of Justice, the Office of Management and Budget, and the Department of Defense all considered the SBA's parity regulations to be consistent with the Act. The opposite conclusion had been reached by the Government Accountability Office in four separate decisions in three separate bid protests.[3]

Even the Federal courts were split on the matter. Although the Court of Federal Claims in *Mission Critical* had concluded that the SBA's parity regulations were inconsistent with the plain meaning of the Act, the District Court for the District of Hawaii had rejected a challenge to the regulations on the grounds that the regulations "sufficiently promote the congressional objective of parity between the HUBZone and 8(a) programs." *Contract Mgmt.*, 291 F. Supp. 2d at 1177.[4]

---

[3] *Int'l Program Grp., Inc.*, B-400278, B-400308, 2008 CPD ¶ 172 (Comp. Gen. Sep. 19, 2008); *Mission Critical Solutions*, B-401057, 2009 CPD ¶ 9 (Comp. Gen. May 4, 2009); *Small Bus. Admin.—Reconsideration*, B-401057.2, 2009 CPD ¶ 148 (Comp. Gen. July 6, 2009); *DGR Assocs. Inc.*, B-402494, 2010 CPD ¶ 115 (Comp. Gen. May 14, 2010).

[4] We note, however, that the District Court's conclusion in *Contract Management* regarding the SBA's parity regulations is difficult to reconcile with the court's ultimate conclusion that the Small Business Act "man-

Thus, at the time DGR filed its bid protest in the Court of Federal Claims, there was a genuine dispute among all three branches of Government as to whether the Air Force was required to give priority to the HUBZone program over the 8(a) program.

That alone should be sufficient reason to conclude that the Department of Justice's merits-based argument in the underlying litigation was, if not actually correct, at least sufficiently grounded in law to be substantially justified under the relatively low threshold standard described above. There is more. Though the Congressional resolution of this issue came after the litigation in the Court of Federal Claims, there had been an earlier indication of the Congress' view of the matter. Following the GAO's *Mission Critical* decision, the Senate proposed amending the Act to clarify that when a contract could be awarded pursuant to more than one small business program, Federal agencies have discretion as to which program to apply. *See* H.R. 2647, 111th Cong. § 838 (July 23, 2009) (Engrossed amendment Senate). While the amendment was under consideration in the House, the Department of Justice issued its 2009 memorandum in reaction to the GAO's *Mission Critical* decision.

One and a half months later, the Senate receded, noting "that the Department of Justice has concluded that no change to the Small Business Act is required to ensure that contracting officers . . . have discretion whether or not to award contracts pursuant to the HUBZone program," and "direct[ing] the Secretary of Defense to continue to administer the HUBZone program in a

---

date[es] that participating agencies set aside contract opportunities to qualified HUBZone small business concerns when the statutory criteria are met." *Id.* at 1174.

manner consistent with the Department of Justice opinion." H.R. Rep. No. 111-288, at 789 (2009).

In view of this clear statement from Congress affirming the SBA regulations at issue, it is difficult for us to conclude that the Government was not substantially justified in believing that the Small Business Act permitted participating agencies to place the HUBZone and 8(a) programs on an equal footing. We conclude, therefore, that the Court of Federal Claims made a clear error of judgment in weighing the factors relevant to the question of whether the Government's merits-based argument was substantially justified.

## B. The Government's Jurisdictional Argument

Whether the Government was substantially justified in its jurisdictional argument presents a considerably closer call, and if it were the primary issue in this case the Government might well lose on that call. Lawyers for the Department of Justice will sometimes lard their briefs on appeal with thinly-grounded jurisdictional objections to this court (or the trial forum) considering the particular appeal on its merits. If successful, it avoids the Government having to address the merits of the cause; however, such jurisdictional dodges are not always well grounded, and thus not always, or even often, successful.

Here, the Government argued that the Court of Federal Claims lacked jurisdiction over DGR's bid protest because DGR did not file suit until after the closing date for receipt of proposals. *DGR*, 97 Fed. Cl. at 218. Though the argument is fundamentally counterintuitive since court suits usually follow the conclusion of administrative action rather than precede it, the Government supported its argument with some language from an earlier opinion of this court in *Blue & Gold Fleet L.P. v. United States*, 492 F.3d 1308, 1313 (Fed. Cir. 2007):

> [A] party who has the opportunity to object to the terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its ability to raise the same objection subsequently in a bid protest action in the Court of Federal Claims.

The Court of Federal Claims summarily rejected the Government's position, noting that to do otherwise "would have parties running into the Court of Federal Claims to challenge solicitation errors, instead of pursuing other [administratively] available avenues." *DGR*, 97 Fed. Cl. at 218. To avoid such an outcome, the court held that:

> The correct interpretation of *Blue & Gold Fleet* is that, if a party has challenged a solicitation impropriety before the close of the bidding process, the party is not precluded from later filing its protest at the Court of Federal Claims. A party must do something before the closing date to preserve its rights, and must thereafter pursue its position in a timely manner.

*Id.*

On appeal, the Government urges that its jurisdictional argument was substantially justified because *Blue & Gold Fleet* inferentially tied the waiver rule to the Court of Federal Claims' statutory grant of jurisdiction, thereby implying that the rule was jurisdictionally preclusive. But we agree with the Court of Federal Claims that the Government's jurisdictional argument has little merit.

In *Blue & Gold Fleet* the point made is straightforward—if there is a patent, *i.e.*, clear, error in a solicitation known to the bidder, the bidder cannot lie in the weeds hoping to get the contract, and then if it does not, blind-

side the agency about the error in a court suit.  The trial court aptly noted that reading more into the statement such as the Government was doing would be inconsistent with the principle of exhaustion of administrative remedies.

In the briefs and argument before this court the jurisdictional issue was a minor part of both the Government's case and DGR's response—in  their principal briefs the Government devoted three pages to it (pp. 42-44), and DGR four (pp. 15-18); the focus was on the merits case. By itself, it is questionable whether we would hold the Government's jurisdictional argument in this case substantially justified.  When viewed in the overall context, as we are required to do, *see Jean*, 496 U.S. 154, 161-62 (1990) ("While the parties' postures on individual matters may be more or less justified, the EAJA—like other fee-shifting statutes—favors treating a case as an inclusive whole, rather than as atomized line-items"), we conclude that the Government's position in this case was "justified to a degree that could satisfy a reasonable person," which is all the Supreme Court and this court require.  *Pierce*, 487 U.S. at 565; *White v. Nicholson*, 412 F.3d 1314, 1315 (Fed. Cir. 2005).

Beyond that, "a position can be justified even though it is not correct, and . . . it can be substantially (*i.e.*, for the most part) justified if a reasonable person could think it correct . . . ."  *Pierce*, 487 U.S. at 566 n.2.  In this case, the Government has in its favor at least one reasonable mind that had come to the same view as the Government regarding our statement in *Blue & Gold Fleet*.  *See Easterhill Boat Serv. Corp. v. United States*, 91 Fed. Cl. 483, 487 (2010) ("The appeals court [in *Blue & Gold Fleet]* could have allowed contractors to file agency-level protests to preserve their pre-award claims, or to object in a manner other than by filing suit in federal court.  Instead,

the court ruled that a contractor wishing to object to terms of a solicitation must file suit in the Court of Federal Claims before the bidding process ends, or not at all.").

Viewing the Government's conduct in this case in its entirety, we are persuaded that the Court of Federal Claims abused its discretion when it concluded that the Government's position was not substantially justified. During the agency stage of these proceedings, the Air Force was bound by law to follow the SBA's parity regulations. And during the subsequent litigation the Government was justified in defending the Air Force's actions in view of the genuine dispute among all three branches of the Government over whether the Act prioritized the HUBZone program over the 8(a) program.

Though the Government's jurisdictional argument may have been less defensible than its merits-based argument and would have been better omitted, we conclude that as a whole the Government's basis for litigating its case was substantially justified. The question before us is not whether DGR had a reasonable case to bring, or even whether the Government's position on the law proved to be correct. It is whether the Government was substantially justified in pursuing its overall view of the case in light of the then-state of the law. We think it was, and the EAJA provides for fee-shifting only when it was not.

CONCLUSION

The Court of Federal Claims' decision to award DGR attorneys' fees and costs under the EAJA is reversed.

**REVERSED**