**ESTERHILL BOAT SERVICE CORPORATION, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

No. 09–735C.

United States Court of Federal Claims.

Jan. 28, 2010.

Sam Z. Gdanski, Gdanski & Gdanski, LLP, Suffern, NY, for plaintiff.

Kent C. Kiffner, Trial Attorney, Civil Division, United States Department of Justice, Washington, DC, for defendant.

## ORDER AND OPINION

HODGES, Judge.

The Department of Veterans Affairs leases space from plaintiff Esterhill Boat Service Corporation for its Rumford, Maine, Community–Based Outpatient Clinic.[1] Esterhill's

post-award protest challenges the Government's decision to move its facilities to another building in March of this year. The Department awarded the new Lease, No. VA–241–09–RP–0209, to Federated Realty Five, LLC.

Esterhill asserts that the Agency restricted competition by imposing a needless one-floor requirement to justify the move, violated the Federal Acquisition Regulation in the procurement process, and acted in an arbitrary and capricious manner in its evaluation of one of the criteria. It filed a motion for judgment on the administrative record.

Defendant cross-moved for judgment on the administrative record and filed a motion to dismiss plaintiff's challenge to the one-floor requirement. According to defendant, Esterhill waived that claim when it did not file a complaint in this court before the end of the bidding process. We agree that plaintiff waived its right to challenge the one-floor requirement. It lacks standing to assert the FAR and arbitrary and capricious claims.

## BACKGROUND

When the Department of Veterans Affairs entered the final year of its lease for the Rumford Clinic in Maine, contracting officer Keith Waye circulated an email to various officials of the Togus VA Medical Center and the Rumford Outpatient Clinic. He explained that the Rumford Clinic's lease was due to expire soon and inquired whether he should renew the current lease or begin looking for a new facility. The administrators agreed that issuing an open solicitation for a longer lease term was the better use of resources, and asked that the new facility provide sufficient space for the clinic to operate on one floor.

Mr. Waye issued a solicitation for a best-value procurement in July 2009. Esterhill, Federated Realty, and River Valley Tech Center submitted proposals.[2] The solicita-

---

1. Togus VA Medical Center is the parent facility for all the Agency's community-based outpatient clinics in Maine. The VA has used Esterhill's building for the Rumford facility for the past five years. Its lease expired in December 2009, but the parties extended it to February 28, 2010.

2. Plaintiff suspected that the VA had been subjected to local and regional political pressure to tailor its solicitation to fit the River Valley Tech Center; many of the VA's requirements were written to favor the Tech Center, plaintiff thought. However, River Valley Tech Center

tion included a provision specifying that the facility should offer between 8,000 and 9,000 square feet, that the space be located on one floor, and that parking be available within 500 feet of the facility. The current lease offers approximately 5,800 square feet on the first and third floors of Esterhill's building. Parking is available closer to the building than specified in the solicitation. Plaintiff protested the one-floor requirement and the parking specifications to the contracting officer in July. Mr. Waye rejected plaintiff's concerns.

VA officials conducted on-site inspections of the three facilities on July 23. They evaluated the facilities according to Surrounding Area, Accessibility, Building, and Natural Conditions. The most heavily-weighted subfactor was the interior's fit for intended purposes. Interior accounted for twenty percent of the overall technical review. The one-floor requirement was a consideration within the Interior subfactor.

Federated received an average score of 8.7 on the Interior subfactor—the equivalent of "Acceptable," and Esterhill's score was 5, or "Minimal." River Valley Tech Center received a 4.1, and finished third overall in the inspections.

The VA rejected River Valley's bid on July 30, and Esterhill's on August 7. Mr. Waye's reason for rejecting plaintiff's bid was "[Esterhill's] inability to provide one dedicated floor for all VA employees...." [3] Esterhill appealed to the Government Accountability Office on August 17, contending that the solicitation restricted competition. The GAO denied the protest on August 19 as untimely, and denied Esterhill's request for reconsideration.[4] The Government does not argue that GAO's interpretation of case law was proper,

but that we should dismiss plaintiff's complaint on other bases.

The contracting officer stated in his letter rejecting plaintiff's bid that "[f]urther negotiations will be conducted only with those offerors who have met [the one-floor requirement.]" Thus, Federated was placed in the competitive range by itself. Negotiations during the month of September resulted in the contracting officer's requesting a best and final offer from Federated, which proposed a ten-year term lease with an annual rent of $277,755. The Government would finance build-out costs over the ten-year period at $112,252 per year. Negotiations thereafter resulted in an agreement that would permit the Government to terminate after five years, but guarantee Federated that the VA would pay any build-out costs then remaining.

## DISCUSSION

Plaintiff's complaint includes allegations that defendant's one-floor requirement was unduly restrictive, that defendant violated the Federal Acquisition Regulation during the procurement, and that a determination by the VA that Federated's building is not located within the 100 year flood plain was arbitrary and capricious. Later, plaintiff contended that Federated obtained a different lease from that offered to Esterhill and River Valley Tech Center; i.e., the contractors did not bid on the same deal.

Defendant questions this court's jurisdiction to hear plaintiff's complaint. The Government raises jurisdictional issues of standing and waiver.

### A. Standing

 Standing to bring a bid protest requires that plaintiff qualify as an interested party. 28 U.S.C. § 1491(b)(1). Interested

had the lowest technical score of the three bidders and was eliminated from the competitive range along with Esterhill.

**3.** The August 7 letter stated, "[d]ue to [Esterhill's] inability to provide one dedicated floor for all VA employees in accordance with VA guidance for integrated primary and mental health care, [the] building does not meet the requirements delineated in the RFP, nor can it be modified at this time to meet the requirements."

**4.** The GAO explained that a challenge must be filed within ten days of the protester's receiving actual or constructive knowledge of initial adverse agency action on its protest. Esterhill's July 10 letter to the VA was an agency-level protest, it reasoned, and Esterhill should have known that its protest had been denied when the VA accepted bids on July 31. Plaintiff disagrees, but emphasizes that it seeks judicial review of the VA's actions rather than GAO's.

parties are "actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract." *Am. Fed'n of Gov't Employees v. United States,* 258 F.3d 1294, 1302 (Fed.Cir. 2001). Contractors who "did not submit proposals, bidders who withdrew from a solicitation, and offerors who were not competitively ranked for the award" cannot qualify as interested parties. *Microdyne Outsourcing, Inc. v. United States,* 72 Fed.Cl. 230, 232 (2006). However, as plaintiff asserts, a disappointed bidder is not necessarily stripped of his standing to protest because he is eliminated from the competitive range. The court must consider why the bidder was eliminated.

The Court of Appeals for the Federal Circuit has addressed application of the term "economic interest." *See Impresa Construzioni Geom. Domenico Garufi v. United States,* 238 F.3d 1324 (Fed.Cir.2001) (holding that bidder "unfairly advantaged" had standing to protest even though it was not in the competitive range). Impresa, one of four parties to bid on a government contract, was placed in the competitive range with two other bidders after one was eliminated. The contracting officer asked the three to submit revised proposals. The contracting officer eliminated Impresa's proposal based on the technical board's determination that it was unacceptable. The contracting officer stated that "a complete rewrite would be required to make the [proposal] acceptable." *Impresa,* 238 F.3d at 1329. The technical board had been particularly concerned about Impresa's management. *Impresa Construzioni Geom. Domenico Garufi v. United States,* 44 Fed.Cl. 540, 551 (1999). The con-

tracting officer had misgivings as well: "[Impresa] may either not fully understand the complete solicitation requirements or be placing itself at an increased performance risk by its proposed prices being 25% below the [government estimate]." *Impresa,* 238 F.3d at 1329.

The issue that created the basis for Impresa's protest was the contracting officer's alleged improper determination that the winning bidder was "responsible."[5] The Federal Circuit found that Impresa had an "economic interest" in the contract because if the contracting officer's responsibility determination were found to be arbitrary and capricious, Impresa could rebid. Therefore, Impresa had standing to bring its bid protest.

Esterhill's challenge to the one-floor requirement may be compared to Impresa's protest of the contracting officer's responsibility determination. If the allegations are correct and the Government were obligated to rebid the contracts, plaintiff could win with resubmitted proposals.[6]

### B. Waiver

Esterhill claims that the VA's one-floor requirement cannot be justified in light of the Agency's needs. *See* 10 U.S.C. § 2305(a)(1)(B)(ii) ("[A] solicitation may include restrictive provisions or conditions only to the extent necessary to justify the agency's needs."). Therefore, the Government unlawfully restricted competition by requiring that the proposed space be contained in one floor. 10 U.S.C § 2305(a)(1)(A)(I) ("[A]n agency shall specify the agency's needs and solicit bids or proposals in a manner designed to achieve full and open competition

---

5. The FAR requires that before a contract is awarded a contractor must be determined "responsible," which includes a review of the contractor's business ethics and integrity as well as his financial reserves, prior commitments, and experience. 48 C.F.R. § 9.104–1.

6. Esterhill's allegations that the Government violated the FAR, and that the contracting officer made an arbitrary and capricious decision regarding the 100 year flood plain, do not give plaintiff such an opportunity. In order to have standing the plaintiff must be an "interested party." A party is interested if there is a substantial chance it would have been awarded the contract.

There is a substantial chance Esterhill would have been awarded the contract if the one-floor requirement were invalidated, because the one-floor requirement is the main reason plaintiff lost points to Federated. Without that requirement the two contractors were essentially on equal footing. However, in the present situation, even if defendant were found to have violated the FAR or acted arbitrarily and capriciously in respect to the flood plain determination, Esterhill would not have a substantial chance of winning the contract because it still would be many points below Federated in the site evaluations because of the one-floor noncompliance.

for the procurement."). Defendant urges this court to reject plaintiff's argument that the one-floor requirement is unduly restrictive because plaintiff did not file its complaint before the bidding process ended, citing *Blue & Gold Fleet, L.P. v. United States.* 492 F.3d 1308 (Fed.Cir.2007) (ruling that a party who has an opportunity to object to terms of a government solicitation containing a patent error and fails to do so prior to the close of the bidding process waives its right to raise the same objection in a subsequent bid protest action in this court.).

Blue & Gold bid on a contract with the National Park Service to provide ferry transportation to Alcatraz Island. When the Park Service awarded the contract to another bidder, Blue & Gold sued in this court to protest the award. Blue & Gold contended that the Park Service should have required that bidders consider the Service Contracts Act in drafting their proposals.[7] This court held that Blue & Gold could have objected to the solicitation prior to the close of bids; by not doing so, plaintiff waived the right to challenge the solicitation. The Circuit agreed with this court that Blue & Gold knew, or had reason to know, that the Park Service did not intend to consider the Act in its evaluation of bids. Thus, petitioner should have filed its protest before the bids were opened.

After *Blue & Gold Fleet* was decided, this court noted in another case that "the Federal Circuit recently held that the proper time for a protest against the terms of the solicitation is before the bids or proposals are submitted." *Weeks Marine, Inc. v. United States,* 79 Fed.Cl. 22, 35 (2007). *Weeks Marine* interpreted the Federal Circuit's ruling in *Blue & Gold Fleet* to require disappointed bidders to protest in the Court of Federal Claims when they discover patent errors in the solicitation, before bid-opening. The Circuit did not reject that conclusion in its re-

view of the trial court's ruling. *See Weeks Marine, Inc. v. United States,* 575 F.3d 1352 (Fed.Cir.2009). The Court of Appeals reasoned:

> In light of *Blue & Gold Fleet,* were we to hold that Weeks cannot now challenge the ... solicitation in the Court of Federal Claims, we effectively would be saying that ... a party runs afoul of the waiver rule if it waits to challenge a solicitation (as Blue & Gold did), but is properly dismissed on standing grounds if it raises the challenge pre-award (as Weeks has done). Such a result would be anomalous.

*Weeks Marine,* 575 F.3d at 1363.[8]

The appeals court could have allowed contractors to file agency-level protests to preserve their pre-award claims, or to object in a manner other than by filing suit in federal court. Instead, the court ruled that a contractor wishing to object to terms of a solicitation must file suit in the Court of Federal Claims before the bidding process ends, or not at all.

Blue & Gold was aware of an uncertainty in the solicitation, but nothing in the solicitation was likely to preclude it from winning the contract; it was seeking an expected advantage from the Government's consideration of the Services Contract Act. Esterhill knew as of July 17, the day that it met with the contracting officer, that the one-floor requirement was mandatory and would be considered in the evaluation process. It knew that its facility did not satisfy an important technical requirement of the solicitation. *Weeks Marine* had established that this court would have had jurisdiction to hear Esterhill's protest that the solicitation was too narrow, even though at the time it could not have shown prejudice. *Id.*

The purpose of the waiver rule is to "prevent contractors from taking advantage of the government, protect other bidders by assuring that all bidders bid on the same

---

7. The Service Contracts Act requires contractors to pay local labor rates on government contracts involving more than $2,500, or rates determined by the predecessor contractor's collective bargaining agreement.

8. The Circuit thus affirmed the lower court's adoption of the *WinStar* standard for pre-award

bid protests: prospective bidder or offeror must establish "a non-trivial competitive injury which can be redressed by judicial relief" to meet the standing requirement of § 1491(b)(1). *Weeks Marine,* 575 F.3d at 1363 (*citing WinStar Communications, Inc. v. U.S.,* 41 Fed.Cl. 748, 763 (1998)).

specifications, and materially aid the administration of government contracts by requiring that ambiguities be raised before the contract is bid, thus avoiding costly litigation after the fact." *Id.* at 1313–14 (*citing Community Heating & Plumbing Co. v. Kelso,* 987 F.2d 1575, 1580 (Fed.Cir.1993)). Esterhill could have sought review in this court pre-award, as noted. If successful, it might have retained the advantage of incumbency without a substantial technical penalty for offering a non-compliant facility. Instead, plaintiff may have attempted to "take[ ] advantage of the government" by waiting to see whether it could win anyway, then filing suit when it did not. *Id.*

■■■■ The waiver rule encourages contractors to seek timely clarification of ambiguities and to prevent disappointed bidders from asserting claims later that they could have raised during the bidding period. Blue & Gold's proposal complied with all provisions of the solicitation, but it would have benefitted competitively if the Park Service had used the Services Contract Act in evaluating the bids. When it did not win without Park Service consideration of the Act in its evaluation, Blue & Gold challenged the solicitation on the basis that it was defective.[9] Preventing Blue & Gold from challenging a solicitation after losing the contract when it knew of a "defect" before the bidding process closed, furthers the dual policy concerns of economy and efficiency.

9. The waiver rule applies when a solicitation contains an error. *Blue & Gold Fleet,* 492 F.3d at 1313–15. "Error" suggests an accident or mistake, however, so the Rule must be capable of a broader application. The Park Service in *Blue & Gold Fleet* did not "accidentally" neglect to list the Service Contracts Act as a consideration in evaluating the bids, for example. The Department of Veterans Affairs did not accidentally include the crucial one-floor requirement in its solicitation. Within the context of the waiver rule, the word "error" as used in this Opinion encompasses deliberate inclusions or exclusions by the Agency as well as oversights and ambiguities.

10. The argument that Federated's building is located in a flood zone lacks merit in any event. A corner of the parking lot may be included in flood zone maps of the area, but plaintiff does not contend that any part of the building is affected. Similarly, Esterhill's pleadings stress that its building has parking places less than 500

Esterhill raised concerns about the one-floor requirement both to the contracting officer and to the GAO. Mr. Waye confirmed that the requirement was mandatory; the GAO declined jurisdiction. Thus, plaintiff made substantial efforts to obtain redress, particularly as compared with those of Blue & Gold. Esterhill apparently gambled on winning the contract anyway, which was entirely within its rights, but then sued when it lost the gamble. Once Esterhill learned that the VA considered the one-floor requirement to be mandatory, it should have filed suit in this court. Esterhill could have and should have protested immediately after its meeting with Mr. Waye.

## C.

Esterhill waived its claim that the one-floor requirement was unduly restrictive. We have ruled that it lacks standing to argue the alleged violation of FAR part 15.206(e) and the flood site determination.[10] Esterhill has argued recently that it was prejudiced by the Government's having signed a more favorable contract with Federated than it advertised to bidders. Esterhill now contends that the VA signed a contract with Federated that is different in terms and price from that offered plaintiff and other bidders.[11] Esterhill's alleged prejudice arises from its assertion that if plaintiff had known that the lease was worth more, it could have outfitted its

feet from the door, while the solicitation calls for parking no more than 500 feet. Plaintiff apparently contends that parking 500 feet from the building would be difficult for many Agency clients, presumably aged and infirm, to manage easily. Plaintiff has not advocated these points seriously during several conferences and hearings.

11. Esterhill claims that the VA signed a lease with Federated that was different from the lease offered to all bidders. Federated should not have been permitted to amortize over a ten-year period, plaintiff contends, because the solicitation offered a five-year term lease with options. By extending amortization costs to ten years, Federated could submit a lower bid. The solicitation did not explain how bidders were to finance the project, or limit amortization calculations to a five-year plan. Absent a claim of collusion, which plaintiff has not raised, we cannot speculate beyond the facts as they appear.

facility to comply with the one-floor requirement. Esterhill did not support this claim during its briefings, or explain why it did not attempt to meet the one-floor requirement before submitting its bid.

The contractors bid on a five-year fixed-term lease with five one-year options. The solicitation did not say how build-out costs were to be amortized, but plaintiff based its amortization on the five-year fixed term. Federated negotiated its costs over ten years, with a guarantee from the Government that absent renewal, it would reimburse Federated the balance of its costs.[12] Thus, the contract that Federated signed on October 21, commits the parties to only five years fixed, but the VA would pay Federated if it terminates after five years. The signed lease is a product of negotiations between Federated and the Government after the other bidders had been eliminated from the competitive range.[13]

### CONCLUSION

Esterhill had standing to sue in this court because it might have submitted a more favorable proposal upon resolicitation, particularly if it had been successful in efforts to invalidate the one-floor requirement. Plaintiff waived its argument that the one-floor requirement was unduly restrictive, however, by not filing a protest in this court before the bids were opened and considered by the Department of Veterans Affairs.

Esterhill's protest of the Veterans Affairs lease for the Rumford, Maine, Community-Based Outpatient Clinic is DENIED. The Clerk of Court will dismiss plaintiff's complaint. No costs.

---

**12.** Federated's offer of lease payments with amortization calculations for a ten-year period was a risk, however. The VA could have terminated the lease after five years and left Federated with five years of outstanding construction costs. The gamble paid off because Federated negotiated a more attractive lease after the VA placed it in the competitive range.

**13.** The Federal Acquisition Regulation provides that after the competitive range has been established, the Government and offerors can undertake negotiations with the intent of allowing the offeror to revise its proposal. 48 C.F.R. § 15.306(d). These negotiations may include bargaining as to "price, schedule, technical requirements, type of contract, or other terms of a proposed contract." *Id.*