# UNITED STATES ET AL. *v.* BEAN

No. 01–704.   Argued October 16, 2002—Decided December 10, 2002

THOMAS, J., delivered the opinion for a unanimous Court.

*Deputy Solicitor General Kneedler* argued the cause for petitioners. With him on the briefs were *Solicitor General Olson, Assistant Attorney General McCallum, Irving L. Gornstein, Mark B. Stern,* and *Thomas M. Bondy.*

*Thomas C. Goldstein* argued the cause for respondent. With him on the brief were *Larry C. Hunter* and *Amy Howe.**

JUSTICE THOMAS delivered the opinion of the Court.

We consider in this case whether, despite appropriation provisions barring the Bureau of Alcohol, Tobacco, and Firearms (ATF) from acting on applications for relief from firearms disabilities of persons convicted of a felony, a federal district court has authority under 18 U. S. C. § 925(c) to grant such relief.

## I

After attending a gun show in Laredo, Texas, respondent, Thomas Lamar Bean, a gun dealer, and his associates drove

---

*Craig Goldblatt* and *Mathew S. Nosanchuk* filed a brief for the Violence Policy Center as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the Law Enforcement Alliance of America, Inc., by *Richard E. Gardiner;* and for the Second Amendment Foundation by *William M. Gustavson.*

respondent's vehicle to Nuevo Laredo, Mexico, for dinner. *Bean* v. *Bureau of Alcohol, Tobacco and Firearms*, 253 F. 3d 234, 236 (CA5 2001). When Mexican officials stopped the vehicle at the border, they found in the back, in plain view, approximately 200 rounds of ammunition. *Ibid.* According to respondent, he had instructed his associates to remove any firearms and ammunition from his vehicle, but inexplicably one box remained. *Ibid.* Respondent was convicted in a Mexican court of importing ammunition into Mexico and sentenced to five years' imprisonment.

Because of his felony conviction, respondent was prohibited by 18 U. S. C. § 922(g)(1) from possessing, distributing, or receiving firearms or ammunition. Relying on § 925(c), respondent applied to ATF for relief from his firearms disabilities. ATF returned the application unprocessed, explaining that its annual appropriations law forbade it from expending any funds to investigate or act upon applications such as respondent's.

Respondent then filed suit in the United States District Court for the Eastern District of Texas. Relying on the judicial review provision in § 925(c), respondent asked the District Court to conduct its own inquiry into his fitness to possess a gun, and to issue a judicial order granting relief from his firearms disabilities. Respondent attached various affidavits from persons attesting to his fitness to possess firearms. After conducting a hearing, the court entered judgment granting respondent the requested relief. The Court of Appeals for the Fifth Circuit affirmed, concluding that congressional refusal to provide funding to ATF for reviewing applications such as respondent's "is not the requisite direct and definite suspension or repeal of the subject rights." 253 F. 3d, at 239. The Fifth Circuit then proceeded to hold that the District Court had jurisdiction to review ATF's (in)action. We granted certiorari. 534 U. S. 1112 (2002).

## II

Under federal law, a person who is convicted of a felony is prohibited from possessing firearms. See § 922(g)(1). The Secretary of the Treasury is authorized to grant relief from that prohibition if it is established to his satisfaction that certain preconditions are met. See § 925(c).[1] An applicant may seek judicial review from a "United States district court" if his application "is denied by the Secretary." *Ibid.*

Since 1992, however, the appropriations bar has prevented ATF, to which the Secretary has delegated authority to act on § 925(c) applications,[2] from using "funds appropriated

---

[1] Title 18 U. S. C. § 925(c) provides:

"A person who is prohibited from possessing, shipping, transporting, or receiving firearms or ammunition may make application to the Secretary for relief from the disabilities imposed by Federal laws with respect to the acquisition, receipt, transfer, shipment, transportation, or possession of firearms, and the Secretary may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest. Any person whose application for relief from disabilities is denied by the Secretary may file a petition with the United States district court for the district in which he resides for a judicial review of such denial. The court may in its discretion admit additional evidence where failure to do so would result in a miscarriage of justice. A licensed importer, licensed manufacturer, licensed dealer, or licensed collector conducting operations under this chapter, who makes application for relief from the disabilities incurred under this chapter, shall not be barred by such disability from further operations under his license pending final action on an application for relief filed pursuant to this section. Whenever the Secretary grants relief to any person pursuant to this section he shall promptly publish in the Federal Register notice of such action, together with the reasons therefor."

[2] Respondent contends that congressional denial of funds to ATF did not eliminate the Secretary's power to act on his application. In support, respondent notes that § 925(c) refers to the action by "the Secretary." That claim, however, is waived, as respondent raised it for the first time in his brief on the merits to this Court.

Even if considered on the merits, respondent's argument faces several difficulties. First, it appears that the Secretary delegated to ATF the

herein . . . to investigate or act upon applications for relief from Federal firearms disabilities under 18 U. S. C. [§ ]925(c)." Treasury, Postal Service, and General Government Appropriations Act, 1993, Pub. L. 102–393, 106 Stat. 1732.[3] Accordingly, ATF, upon receipt of respondent's petition, returned it, explaining that "[s]ince October 1992, ATF's annual appropriation has prohibited the expending of any funds to investigate or act upon applications for relief from Federal firearms disabilities." App. 33–34. Respondent contends that ATF's failure to act constitutes a "denial" within the meaning of § 925(c), and that, therefore, district courts have jurisdiction to review such inaction.

We disagree. Inaction by ATF does not amount to a "denial" within the meaning of § 925(c). The text of § 925(c) and

---

exclusive authority to act on petitions brought under § 925(c), see 27 CFR §§ 178.144(b) and (d) (2002); such delegation is not unreasonable. Second, even assuming the Secretary has retained the authority to act on such petitions, it is not clear that respondent would prevail were he to file a requisite action under 5 U. S. C. § 706(1) (providing for judicial review to "compel agency action unlawfully withheld or unreasonably delayed"). Not only does the Secretary, by the explicit terms of the statute, possess broad discretion as to whether to grant relief, see *infra*, at 76–78, but congressional withholding of funds from ATF would likely inform his exercise of discretion.

[3] In each subsequent year, Congress has retained the bar on the use of appropriated funds to process applications filed by individuals. Treasury and General Government Appropriations Act, 2002, Pub. L. 107–67, 115 Stat. 519; Consolidated Appropriations Act, 2001, Pub. L. 106–554, 114 Stat. 2763A–129; Treasury and General Government Appropriations Act, 2000, Pub. L. 106–58, 113 Stat. 434; Treasury and General Government Appropriations Act, 1999, Pub. L. 105–277, 112 Stat. 2681–485; Treasury and General Government Appropriations Act, 1998, Pub. L. 105–61, 111 Stat. 1277; Treasury, Postal Service, and General Government Appropriations Act, 1997, Pub. L. 104–208, 110 Stat. 3009–319; Treasury, Postal Service, and General Government Appropriations Act, 1996, Pub. L. 104–52, 109 Stat. 471; Treasury, Postal Service and General Government Appropriations Act, 1995, Pub. L. 103–329, 108 Stat. 2385; Treasury, Postal Service, and General Government Appropriations Act, 1994, Pub. L. 103–123, 107 Stat. 1228.

the procedure it lays out for seeking relief make clear that an actual decision by ATF on an application is a prerequisite for judicial review, and that mere inaction by ATF does not invest a district court with independent jurisdiction to act on an application.

Grammatically, the phrase "denied by the Secretary" references the Secretary's decision on whether an applicant "will not be likely to act in a manner dangerous to public safety," and whether "the granting of the relief would not be contrary to the public interest." The determination whether an applicant is "likely to act in a manner dangerous to public safety" can hardly be construed as anything but a decision actually denying the application.[4] And, in fact, respondent does not contend that ATF actually passed on his application, but rather claims that "refusal to grant relief constitutes a literal, or at least a *constructive,* denial of the application because it has precisely the same impact on [the applicant] as denial on the merits." Brief for Respondent 35 (internal quotation marks and citations omitted).

The procedure that § 925(c) lays out for those seeking relief also leads us to conclude that an actual adverse action on the application by ATF is a prerequisite for judicial review. Section 925(c) requires an applicant, as a first step, to petition the Secretary and establish to the Secretary's satisfaction that the applicant is eligible for relief. The Secretary, in his discretion, may grant or deny the request based on the broad considerations outlined above. Only then, if the

---

[4] Also counseling against construing failure to act as a denial for purposes of § 925(c) is the fact that while the Administrative Procedure Act (APA) draws a distinction between a "denial" and a "failure to act," see 5 U. S. C. § 551(13), an applicant may obtain judicial review under § 925(c) only if an application is denied. See 2A N. Singer, Sutherland on Statutes and Statutory Construction § 46:06, p. 194 (6th ed. 2000) ("The use of different terms within related statutes generally implies that different meanings were intended").

Secretary denies relief, may an applicant seek review in a district court.

This broad authority of the Secretary, *i. e.*, ATF, to grant or deny relief, even when the statutory prerequisites are satisfied, shows that judicial review under § 925(c) cannot occur without a dispositive decision by ATF. First, in the absence of a statutorily defined standard of review for action under § 925(c), the APA supplies the applicable standard. 5 U. S. C. § 701(a). Under the APA, judicial review is usually limited to determining whether agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." § 706(2)(A). Application of the APA standard of review here indicates that judicial review is predicated upon ATF's dispositive decision: the "arbitrary and capricious" test in its nature contemplates review of some action by another entity, rather than initial judgment of the court itself.

Second, both parts of the standard for granting relief point to ATF as the primary decisionmaker. Whether an applicant is "likely to act in a manner dangerous to public safety" presupposes an inquiry into that applicant's background—a function best performed by the Executive, which, unlike courts, is institutionally equipped for conducting a neutral, wide-ranging investigation. Similarly, the "public interest" standard calls for an inherently policy-based decision best left in the hands of an agency.

Third, the admission of additional evidence in district court proceedings is contemplated only in exceptional circumstances. See 18 U. S. C. § 925(c) (allowing, "in [district court's] discretion," admission of evidence where "failure to do so would result in a miscarriage of justice"). Congressional assignment of such a circumscribed role to a district court shows that the statute contemplates that a district court's determination will heavily rely on the record and the decision made by ATF. Indeed, the very use in § 925(c) of

the word "review" to describe a district court's responsibility in this statutory scheme signifies that a district court cannot grant relief on its own, absent an antecedent actual denial by ATF.

Accordingly, we hold that the absence of an actual denial of respondent's petition by ATF precludes judicial review under § 925(c), and therefore reverse the judgment of the Court of Appeals.

*It is so ordered.*