In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-2256

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

LEROY F. MILLER,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:04-cr-138—**Robert L. Miller, Jr.**, *Chief Judge*.

SUBMITTED OCTOBER 15, 2009—DECIDED NOVEMBER 19, 2009

Before EASTERBROOK, *Chief Judge*, and KANNE and TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Leroy Miller was convicted of aiding and abetting the possession of firearms by Ricky Fines, a felon. Last year we affirmed Miller's conviction and 10-month sentence. 547 F.3d 718 (7th Cir. 2008). Miller then asked the district court to return the 34 firearms that had been seized at his farm. See Fed. R. Crim. P. 41(g). To retain them, Miller contended, the United States needs an order of forfeiture—but forfeiture

may be initiated only within 120 days of the seizure. 18 U.S.C. §924(d)(1). A timely administrative proceeding was filed but abandoned; the United States concedes that it was defective. The indictment, which includes a count seeking forfeiture, was returned more than 120 days after the seizure. The United States acknowledges that it is too late to commence a forfeiture proceeding. But it maintains that the district court nevertheless must order the functional equivalent of forfeiture, because Miller's felony conviction prevents him from possessing the weapons and makes their return unlawful.

Miller responded by asking the district judge to order the United States to sell the weapons for his account or deliver them to someone legally entitled to possess them. The judge declined and instead authorized the United States to destroy the guns. 2009 U.S. Dist. LEXIS 39458 (N.D. Ind. Apr. 28, 2009). The judge concluded that the United States is not obliged to act as a felon's auctioneer, and that handing the guns over to one of Miller's relatives would leave him in constructive possession, which would be as unlawful as physical possession. The judge recognized that the United States, having missed the statute of limitations for initiating a forfeiture proceeding, has no legal entitlement to the weapons. Forced to choose between unlawful outcomes, the judge thought it best for the United States to destroy the guns. Miller's appropriate remedy, the judge thought, would be to collect just compensation from the United States for a taking. (The judge suggested a suit under 42 U.S.C. §1983, but as that statute applies only to state

actors the judge surely meant a suit under the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491.)

The district court's disposition finds support in the decisions of two circuits. See *United States v. Felici*, 208 F.3d 667, 670 (8th Cir. 2000); *United States v. Howell*, 425 F.3d 971, 972–73 (11th Cir. 2005). These decisions conclude that the United States is not obliged to confer a benefit on a felon by selling guns as his agent, and that any other approach would permit the felon to maintain unlawful possession of the weapons. One court of appeals has concluded, to the contrary, that the United States must sell the weapons for the felon's account if, by missing the statutory deadline, it disables itself from obtaining an order of forfeiture. *Cooper v. Greenwood*, 904 F.2d 302, 304 (5th Cir. 1990).

The fifth circuit has the stronger position—and not just because the contrary view nullifies the statute of limitations. The district court's middle ground—the United States destroys the guns, then pays their value as just compensation for a taking—differs from an order to sell the weapons only by requiring an extra round of litigation and replacing the weapons' actual value (which a sale will determine) with an estimate (in any Tucker Act litigation the parties may disagree about how much the guns would have fetched, had they been sold). It is hard to see how either the United States or Miller can be made better off by replacing an actual sale with litigation in which the parties will offer expert evaluations of the weapons' market value, and the Treasury will be out of pocket that amount (because destroying the guns

does not produce any revenue to cover the cost of a judgment under the Tucker Act).

More than that. We do not see why all alternatives to sale or destruction necessarily would be unlawful. One of the weapons (a Deutsche Waffen Fabriken Argentino 1891 model) appears to be an antique that Miller may possess lawfully despite his conviction. 18 U.S.C. §921(a)(3), (16). As for the other 33: constructive possession means control or dominion over property without actual custody of it. See *United States v. Caldwell*, 423 F.3d 754, 758 (7th Cir. 2004). So if the United States were to surrender the firearms to someone willing to accept Miller's instructions about their disposition, then Miller would retain constructive possession. But there are other possibilities:

- Gift of the firearms to one of Miller's friends or relatives. If the United States fears that the recipient will treat Miller as the weapons' beneficial owner, the transfer could be conditioned on the recipient's written acknowledgment that returning the guns to Miller or honoring his instructions would aid and abet Miller's unlawful possession—the felony of which Miller himself has been convicted—and thus subject the recipient to criminal prosecution.

- Transfer of the firearms in trust to a reliable trustee (such as a bank) that promises to put them in a safe deposit vault and not return them to Miller, or honor any of his instructions

about them, unless he regains his ability to possess them lawfully.

- Storage of the firearms by the United States while Miller's firearms disability continues.

Miller's inability to possess firearms lasts only as long as his conviction. A pardon thus would end the disability. 18 U.S.C. §921(a)(20); *Beecham v. United States*, 511 U.S. 368 (1994). And the Attorney General is authorized to lift the firearms disability even for felons who have not been pardoned. 18 U.S.C. §925(c). Although appropriations riders have hampered restorations under §925(c), see *United States v. Bean*, 537 U.S. 71 (2002), the Attorney General must implement that statute when funds are available.

Because the United States did not commence a timely forfeiture proceeding, Miller's property interest in the firearms continues even though his possessory interest has been curtailed. If the United States does not want to sell them for his account, then it must offer Miller some other lawful option: having a trustee sell or hold the guns, or giving them to someone who can be relied on to treat them as his own. The judgment of the district court is vacated, and the case is remanded for further proceedings consistent with this opinion.