## SECURITIES AND EXCHANGE COMMISSION, Plaintiff,

### v.

### Bruce D. STREBINGER, et al., Defendants.

### Civil Action No. 1:14–CV–03533–LMM.

United States District Court, N.D. Georgia, Atlanta Division.

Signed June 11, 2015.

Kristin Beth Wilhelm, Madison Graham Loomis, U.S. Securities and Exchange Commission, Atlanta, GA, for Plaintiff.

Amy Jo Eldridge, Jonathan N. Eisenberg, K & L Gates, Washington, DC, Michael J. Quinn, K &· L Gates LLP, Los Angeles, CA, Brian Joel Levy, Ross A. Albert, Morris Manning & Martin, LLP, Atlanta, GA, for Defendants.

### *ORDER*

LEIGH MARTIN MAY, District Judge.

·This matter is before the Court on Defendants Bruce D. Strebinger's, Muskateer Investments, Inc.'s ("Muskateer"), Anne Strebinger's, and Furla Blue SpA's ("Furla") (collectively, "Defendants") Motion for Oral Argument [Doc. No. 20],[1] and· Defendants' Motion to Dismiss [Doc. No. 12]. For the reasons explained in this order, Defendants' motions are **DENIED**.

### I. *FACTUAL AND PROCEDURAL BACKGROUND*

In May of 2009, Mr. Strebinger and Brent Howard Chapman began acquiring stock in Americas Energy Company–AECo ("Americas"), a United States public company with "penny" common stock [Doc. No. 1, 2].[2] At this time, Americas was

---

**1.** While styled as a "Request," the Court construes this filing as a motion.

**2.** Solely for the purposes of reviewing Defendants' motion to dismiss, the Court construes the well-pleaded factual allegations maintained within the SEC's complaint as true.

a shell public company that had never earned revenues and possessed no material assets [*id.* at 8]. Ultimately, both Mr. Strebinger and Mr. Chapman each acquired more than 5% of Americas' stock [*id.* at 17]. However, neither Mr. Strebinger nor Mr. Chapman filed a Schedule 13D report with the SEC disclosing this amount of ownership in Americas' stock, as required by Section 13(d) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a *et seq.*[*id.*].[3]

While acquiring portions of Americas' stock, Mr. Strebinger began facilitating a reverse merger between Americas and an oil and gas exploration business based in Nashville, Tennessee [Doc. No. 1, 8]. Pursuant to this potential merger, Mr. Strebinger hired Daniel Breckenridge to write reports that promoted the value of Americas' stock [*id.* at 19]. Subsequently, Mr. Breckenridge hired Jarett Wollstein to write the promotional reports requested by Mr. Strebinger (the "Wollstein Reports") [*id.*], and Mr. Strebinger directed the initial draft of the first of the Wollstein Reports [*id.* at 20]. In addition to directing this initial draft, Mr. Strebinger determined when the contents of the Wollstein Reports were final [*id.* at 24].

To further promote their stock with prospective investors, Mr. Strebinger and Mr. Chapman arranged for an independent research firm owned by D. Paul Cohen to create and distribute via email another report regarding Americas' stock (the "Cohen Report") [*id.* at 25]. While using a third party to author this report, both Mr. Strebinger and Mr. Chapman helped edit, and otherwise provided information for, the Cohen Report [*id.* at 25–26]. Ultimately, Mr. Strebinger and Mr. Chapman arranged and funded the dissemination of both the Wollstein Reports and the Cohen Report to prospective investors [*id.* at 28].

However, both the Wollstein Reports and the Cohen Report contained several materially false and otherwise misleading statements [*id.* at 29]. Specifically, the Wollstein Reports failed to disclose Mr. Strebinger's and Mr. Chapman's ownership interest in Americas, provided inaccurate information regarding their own distribution costs, and did not provide notice that Mr. Strebinger and Mr. Chapman were marketing and funding Americas' stock promotion [*id.* at 29–30]. In comparison, the Cohen Report also failed to reveal Mr. Strebinger's and Mr. Chapman's ownership interest in Americas, instead directing potential investors to review Schedule 13D reports filed with respect to Americas [*id.* at 32–33]. As Mr. Strebinger and Mr. Chapman had not filed their necessary Schedule 13D reports, such a directive did not reveal Mr. Strebinger's and Mr. Chapman's ownership interest in Americas.

Promotion of Americas' stock began through the release of the first of the Wollstein Reports in September of 2009 and continued through April 2010 [*id.* at 3, 20]. During this promotion, which included the release of the Cohen Report in November 2009, Americas' stock price rose significantly [*id.* at 3, 26]. Specifically, on September 14, 2009, the day the first of the Wollstein Reports was released, Americas' stock price closed at $.94 [*id.* at 37]. By February of 2010, Americas' stock price reached a closing high of $5.21 [*id.* at 38]. As the stock price rose due to this promotion, Mr. Strebinger and Mr. Chapman were able to sell their shares of Americas' stock on the public market for $17 million through offshore accounts [*id.* at 3]. Specifically, Mr. Strebinger was able

---

**3.** Section 13(d) of the Exchange Act requires "beneficial owners" to disclose acquisition of ownership of more than five percent of a company's equity securities within ten days of purchase. 15 U.S.C. § 78m(d)(1).

to sell shares of Americas' stock through Muskateer, a Swiss financial institution that he beneficially owned [*id.*]. Mr. Strebinger also sold stock through Furla, a Swiss financial institution beneficially owned by his wife, Ms. Strebinger [*id.*]. Mr. Chapman sold Americas' stock during the aforementioned promotion through Lance Investments S.A. ("Lance"), a Swiss financial institution he beneficially owned [*id.*].

Ultimately, as promotion decreased and Mr. Strebinger's and Mr. Chapman's shares were sold, the price of Americas' stock dropped significantly [*id.* at 43]. Specifically, on September 14, 2010, one year removed from the start of its promotional campaign, Americas' stock price closed at $0.67 [*id.*]. By December 2011, Americas fell into bankruptcy and its stock became worthless [*id.*].

The SEC initiated this action on November 3, 2014, asserting the following claims against Mr. Strebinger and Mr. Chapman: 1. Fraud under Section 17(a)(1) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77a *et seq.*; 2. Fraud under Sections 17(a)(2) and 17(a)(3) of the Securities Act; 3. Fraud under Section 10(b) of the Exchange Act, and Rule 10b–5 thereunder; 4. Liability under Section 20(b) of the Exchange Act; and 5. Corresponding Aiding and Abetting claims for violations of Section 10(b), 13(d), and 20(b) of the Exchange Act, and Rules 10b–5, 13d–1, and 13d–2(a) thereunder [*id.* at 43–51]. In support of these claims, the SEC alleges that Mr. Strebinger and Mr. Chapman promoted Americas' stock in a deceptive manner while simultaneously concealing their trades of Americas' stock through Swiss accounts [*id.* at 11–12]. The SEC also asserts a claim against Mr. Strebinger and Mr. Chapman, as well as Muskateer which also owned more than 5% of Americas' stock, for violating Section 13(d) of the Exchange Act and Rules 13d–1 and 13d–2(a) thereunder for failure to file Schedule 13D reports [*id.* at 47]. In addition to asserting these claims against Mr. Strebinger, Mr. Chapman, and Muskateer, the SEC's complaint also names Ms. Strebinger, Furla, and Lance as relief defendants [*id.* at 7].

In lieu of filing an answer to the SEC's complaint, Defendants have filed a motion to dismiss pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure [Doc. No. 12, 1]. In addition, Defendants have filed a separate motion requesting "that this Court hear oral argument on their Motion to Dismiss for failure to state a claim for relief." [Doc. No. 20, 1].

Below, as they are ripe for adjudication, the Court addresses the motions currently pending in this action.

## II. DEFENDANTS' MOTION FOR ORAL ARGUMENT

Defendants request oral argument on their pending motion to dismiss. However, as their motion provides sufficient briefing on the issues presented in this action, the Court does not believe oral argument is necessary. *See St. James Entm't LLC v. Crofts*, 837 F.Supp.2d 1283, 1287 (N.D.Ga.2011) (holding oral argument on a particular motion is unwarranted when said motion is sufficiently briefed). Accordingly, for the sake of clarity in the record, Defendants' Motion for Oral Argument [Doc. No. 20] is hereby **DENIED.**

## III. DEFENDANTS' MOTION TO DISMISS

### A. Legal Standard

■ A complaint may be dismissed under a Rule 12(b)(6) motion to dismiss if the facts as pled do not state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining "only a

complaint that states a plausible claim for relief survives a motion to dismiss."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561–62, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (retiring the prior *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), standard which provided that in reviewing the sufficiency of a complaint, the complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."). In *Iqbal*, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937.

■ In *Twombly*, the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555, 127 S.Ct. 1955. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555, 127 S.Ct. 1955 (internal citations and emphasis omitted).

### B. Discussion

■ In their motion to dismiss, Defendants make the following arguments: 1. All of the SEC's claims are time barred by the five year statute of limitations established under 28 U.S.C. § 2462; 2. The SEC fails to state a viable claim against Mr. Strebinger under Section 10(b) of the Exchange Act; 3. The SEC fails to state a viable claim against Mr. Strebinger under Section 17(a) of the Securities Act; 4. The SEC fails to state a viable aiding and abetting claim against Mr. Strebinger; and 5. The SEC fails to state a viable claim against Mr. Strebinger under Section 20(b) of the Exchange Act [Doc. No. 12–1, 24–43]. Below, the Court addresses each of these arguments in turn.[4]

#### 1. The SEC's claims are not time barred by 28 U.S.C. § 2462

■ 28 U.S.C. § 2462 provides that "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture, pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued." In general, with respect to Government enforcement actions that seek civil penalties, this "five-year clock begins to tick—when a defendant's allegedly fraudulent conduct occurs." *Gabelli v. SEC*, —— U.S. ——, 133 S.Ct. 1216, 1220, 185 L.Ed.2d 297 (2013). However,

---

4. In their motion, Defendants also argue that the SEC's complaint constitutes a "shotgun pleading" because it "does not link the 'facts' alleged in the first 182 paragraphs with the specific claims alleged" [*id.* at 22]. In essence, as the SEC correctly notes in its response brief, Defendants maintain this action's complaint is a shotgun pleading because it "incorporates each of its factual allegations into each of the counts its asserts" [Doc. No. 14, 13]. However, as explained more fully *infra*, all of the SEC's claims are based on one continuous act of fraud and, therefore, it is appropriate for the SEC to incorporate all of its factual allegations into each count. Further, as a general rule, a complaint only constitutes a shotgun pleading when it fails "to identify claims with sufficient clarity to enable the defendant to frame a responsive pleading." *Beckwith v. Bellsouth Telecomms., Inc.*, 146 Fed.Appx. 368, 371 (11th Cir.2005). Here, as evidenced by the Defendants' 35 page brief in support of its motion to dismiss, the SEC's complaint appropriately enables a defendant to assert a responsive pleading. Therefore, Defendants' argument that the SEC's complaint constitutes a shotgun pleading is without merit.

"[u]nder the continuing violations doctrine, the statute of limitations [under 28 U.S.C. § 2462] is tolled for a claim that otherwise would be time-barred where the violation giving rise to the claim continues to occur within the limitations period." *Nat'l Parks & Conservation Ass'n, Inc. v. Tenn. Valley Auth.*, 502 F.3d 1316, 1322 (11th Cir.2007). In determining whether the continuing violations doctrine is applicable, the Court must "distinguish between the 'present consequences of a one-time violation,' which do not extend the limitations period, and 'a continuation of a violation into the present,' which does." *Id.* (quoting *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 658 (11th Cir.1993)).

In their motion to dismiss, Defendants maintain that all of the SEC's claims are time barred because they concern certain individual acts that occurred more than five years before this action was initiated [Doc. No. 12–1, 38–43]. Specifically, Defendants argue the SEC's claims concern Mr. Strebinger's initial acquisition of Americas' stock, Mr. Strebinger's and Muskateer's failure to file a Schedule 13D report, and Mr. Strebinger's commission of the Wollstein Reports and the Cohen Report, all of which occurred before November 3, 2009 [*id.*].[5] However, these individual acts, standing alone, do not form the basis of the SEC's claims in this action. Instead, the SEC's claims are based on one *continuous* fraudulent scheme that encompasses several individual acts, including the acts referenced in Defendants' motion to dismiss. Therefore, pursuant to the continuing violations doctrine, Defendants' argument is without merit.

Specifically, the SEC's claims are based on the overarching allegation that Mr. Strebinger and Mr. Chapman engaged in a "pump-and-dump" stock scheme, "a form of stock fraud that involves artificially inflating the price of an owned stock through false and misleading positive statements, in order to sell the cheaply purchased stock at a higher price." *SEC v. Curshen*, 888 F.Supp.2d 1299, 1301 n. 3 (S.D.Fla. 2012). Consistent with this allegation, the SEC's claims are based on the *cumulative effect* of all the acts performed by Mr. Strebinger, Mr. Chapman, and Muskateer in furtherance of this fraudulent scheme. Therefore, under the continuing violations doctrine, all conduct in furtherance of this pump-and-dump scheme is considered a single act for purposes of 28 U.S.C. § 2462 analysis. *See Birkelbach v. SEC*, 751 F.3d 472, 479 n. 7 (7th Cir.2014) (stating the continuing violations doctrine "permit[s] the SEC to consider untimely violative conduct so long as there was some timely violative conduct and the conduct as a whole can be considered as a single course of conduct.").

In its complaint, the SEC clearly articulates that the pump-and-dump scheme at issue in this action continued through April of 2010, ending once Mr. Strebinger and Mr. Chapman sold all of their Americas' stock [Doc. No. 1, 3]. Therefore, pursuant to the continuing violations doctrine, all of the SEC's claims are based on one continuous act that concluded in April of 2010, less than five years before this action was initiated. Accordingly, the SEC's claims are not time barred under 28 U.S.C. § 2462.[6]

5. Again, this action was filed on November 3, 2014. Therefore, all acts prior to November 3, 2009 occurred more than five years before this action was initiated.

6. The Court acknowledges that the SEC additionally argues 28 U.S.C. § 2462 is inapplicable because its claims, in addition to civil penalties, seek "equitable relief in the form of injunctions, disgorgement, and penny stock bars" [Doc. No. 14, 35]. However, as the SEC's claims are not time barred under 28 U.S.C. § 2462 for the reasons explained *supra*, the Court does not need to address this argument.

**2. The SEC sufficiently alleges fraud claims against Mr. Strebinger under Section 10(b) of the Exchange Act and Rule 10b–5 thereunder**

To maintain a viable claim under Section 10(b) of the Exchange Act and Rule 10b–5 thereunder,[7] the SEC must establish "(1) material misrepresentations or materially misleading omissions, (2) in connection with the purchase or sale of securities, (3) made with scienter." *SEC v. Merch. Capital, LLC*, 483 F.3d 747, 766 (11th Cir.2007) (citing *Aaron v. SEC*, 446 U.S. 680, 695, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980)). In its motion to dismiss, Defendants argue that the SEC fails to properly allege a violation of Section 10(b) because its "Complaint does not create a strong inference that Mr. Strebinger knew or was reckless in not knowing the facts that the [SEC] claims" were committed in furtherance of the pump-and-dump scheme [Doc. No. 12–1, 27]. Defendants further argue that the SEC's Section 10(b) claim relies "overwhelmingly on conclusory allegations" [Doc. No. 19, 9]. In essence, Defendants argue that the SEC's complaint, with respect to the fraud claim under Section 10(b) of the Exchange Act and Rule 10b–5 thereunder, fails to satisfy the pleading standards of Rule 9(b).

As an initial matter, the Court acknowledges that Rule 9(b) is applicable to claims of fraud under Section 10(b) and Rule 10b–5. *Kammona v. Onteco Corp.*, 587 Fed.Appx. 575, 581 (11th Cir.2014). Therefore, a complaint alleging claims under Section 10(b) and Rule 10b–5 must not only include sufficient factual allegations to satisfy the plausibility pleading standard of Rule 8(a), it must also satisfy the heightened pleading requirements established under Rule 9(b). To properly allege fraud under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). This *particularity* requirement is satisfied when a complaint includes "facts as to time, place, and substance of the defendant's alleged fraud." *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1308 (11th Cir.2002) (citation omitted); *see also U.S. ex rel. Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1222 (11th Cir.2012) ("The particularity requirement of Rule 9(b) is satisfied if the complaint alleges facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.") (internal quotations and citation omitted).

Here, the SEC's 55 page, 209 paragraph complaint appropriately alleges a claim under Section 10(b) against Mr. Strebinger. Specifically, with respect to Mr. Strebinger's material misrepresentations or materially misleading omissions, the SEC's complaint alleges the following: 1. Mr. Strebinger failed to file a Schedule 13D after acquiring more than 5% of Americas' stock [Doc. No. 1, 17]; 2. Mr. Strebinger contributed to the contents of the Wollstein Reports [*id.* at 20]; Mr. Strebinger edited, and otherwise provided information for, the Cohen Report [*id.* at 25–26]; 4. While knowing they contained false or otherwise misleading statements, Mr. Strebinger helped arrange the dissemination of the Wollstein Reports and the Cohen Report [*id.* at 28–29]. The SEC's complaint further alleges that, after driving up the price of Americas' stock through a false or otherwise misleading promotional campaign, Mr. Strebinger sold his stock in Americas through Swiss financial institutions for a substantial profit [*id.* at 3]. Finally, the SEC's complaint alleges

---

7. "Rule 10b–5 encompasses only conduct already prohibited by § 10(b)." *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 157, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008).

that Mr. Strebinger's actions of promoting Americas' stock with false and/or misleading information was done with "an intent to deceive, manipulate or defraud." in order to sell his own Americas' stock for profit [*id.* at 46]. Therefore, the SEC's factual allegations, with respect to its claim under Section 10(b), satisfy the particularity pleading standard of Rule 9(b).

■■■ Defendants additionally argue that the SEC does not allege a proper claim under Rule 10b–5 as a matter of law. In support of this argument, Defendants maintain the SEC fails to allege that Mr. Strebinger *made* the misstatements within the Wollstein Reports and the Cohen Report. Instead, Defendants maintain that the SEC only alleges that Mr. Strebinger *aided* in the production of their content. Defendants argue that this limited allegation is insufficient as a matter of law, as Section 10(b) only recognizes claims based on "primary," as opposed to "aiding and abetting," liability [Doc. No. 12–1, 25]. In support of this argument, Defendants rely on *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994) and *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 131 S.Ct. 2296, 180 L.Ed.2d 166 (2011).

Defendants are correct that, in *Cent. Bank of Denver, N.A.*, the Supreme Court did hold "that a private plaintiff may not maintain an aiding and abetting suit under § 10(b)." 511 U.S. at 191, 114 S.Ct. 1439. However, in articulating this holding, the Supreme Court cautioned that "[t]he absence of § 10(b) aiding and abetting liability does not mean that secondary actors in the securities markets are always free from liability under the securities Acts." *Id.* Therefore, "any person or entity . . . who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b–5." *Id.*

In *Janus*, the Supreme Court expanded on the aiding and abetting limitation, holding "[f]or purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." 131 S.Ct. at 2302. More to the point, the Supreme Court held in *Janus* that only the *maker* of a statement is liable under Rule 10b–5, not an individual that merely *aids* in the making of the statement. *Id.* However, this holding is limited to subsection (b) of Rule 10b–5, which states that it is unlawful for any person, with respect to interstate commerce, "[t]o *make* any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made." 17 C.F.R. § 240.10b–5(b). *See SEC v. Monterosso*, 756 F.3d 1326, 1334 (11th Cir.2014) ("*Janus* only discussed what it means to 'make' a statement for purposes of Rule 10b–5(b), and did not concern . . . Rule 10b–5(a) or (c)."). In short, "*Janus* did not alter the potential for liability under Rule 10b–5(a) and (c)." *U.S. SEC v. Big Apple Consulting USA, Inc.*, 783 F.3d 786, 796 (11th Cir.2015).[8] In other words, the maker re-

8. The Court acknowledges that the Supreme Court *potentially* limited its holding in *Janus* to private actions under Rule 10b–5. *See Janus*, 131 S.Ct. at 2302 (stating that actions under Rule 10b–5 "against entities that contribute 'substantial assistance' to the making of a statement but do not actually make it— may be brought by the SEC, [ ] but not by private parties."). However, it appears that "[t]he law remains unsettled as to whether

*Janus* applies to a public securities fraud action." *SEC v. True N. Fin. Corp.*, 909 F.Supp.2d 1073, 1119 (D.Minn.2012). As explained more fully *infra*, the Court determines that the *Janus* holding, because it is limited to subsection (b) of Rule 10b–5, is not applicable to the SEC's complaint. Therefore, in adjudicating Defendants' motion to dismiss, the Court does not need to address whether the

quirement is required in a different subsection than the one in which Mr. Strebinger is charged.

▉ Mr. Strebinger is actually charged under Rules 10b–5(a) and (c). Rule 10b–5(a) states that it is unlawful for an individual, with respect to interstate commerce, "[t]o employ any device, scheme, or artifice to defraud." 17 C.F.R. § 240.10b–5(a). Additionally, Rule 10b–5(c) prohibits an individual in interstate commerce "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b–5(c). Therefore, subsection (a) and (c) of Rule 10b–5, unlike subsection (b), do not require an individual "make" a false statement to establish liability. *Monterosso*, 756 F.3d at 1334 ("Likewise, subsections (a) and (c) of Rule 10b–5 are not so restricted as subsection (b), because they are not limited to the making of an untrue statement of a material fact.") (internal quotation marks and citation omitted).

Again, the SEC alleges that Mr. Strebinger was part of a scheme involving the contents of the Wollstein Reports and the Cohen Report to improperly inflate Americas' stock price. These allegations, if true, properly support a fraud claim under Rule 10b–5(a) and (c). The fact that the SEC does not allege Mr. Strebinger "made" a misstatement in furtherance of this scheme, thereby prohibiting liability solely under subsection (b) of Rule 10b–5, does not alter this analysis. *See Big Apple Consulting*, 783 F.3d at 796 ("Therefore, the reality remains that even a person like the mutual fund investment adviser in *Janus*, who is not the 'maker' of an untrue statement of material fact, nonetheless could be liable as a primary violator of Rule 10b–5(a) and (c)."). Such a result is consistent with limitations articulated in *Cent. Bank of Denver, N.A*, specifically allowing a "secondary actor" within a fraudulent scheme to still "be liable as a primary violator under 10b–5." 511 U.S. at 191, 114 S.Ct. 1439; *see also Scientific-Atlanta, Inc.*, 552 U.S. at 166, 128 S.Ct. 761 (stating "§ 10(b) continues to cover secondary actors who commit primary violations."). In short, as it does not account for subsections (a) and (c) of Rule 10b–5, Defendants argument regarding the "aiding and abetting" limitations articulated in *Cent. Bank of Denver, N.A.* and *Janus* are misplaced. Therefore, pursuant to subsections (a) and (c) of Rule 10b–5, the SEC's complaint properly alleges a claim of fraud against Mr. Strebinger under Rule 10b–5.[9]

In summary, the SEC's complaint alleges with sufficient particularity Mr. Strebinger's participation in the alleged pump-and-dump scheme of Americas' stock. Accordingly, the SEC's claim under Section 10(b) of the Exchange Act and Rule 10b–5

---

*Janus* holding is applicable to a public securities fraud action.

9. In its motion to dismiss, Defendants argue that the SEC cannot establish a claim under Rule 10b–5(a) and (c) "by alleging 'scheme liability'" [Doc. No. 12–1, 26]. In support of this argument, Defendants rely on *SEC v. Kelly*, 817 F.Supp.2d 340 (S.D.N.Y.2011). In *Kelly*, the United States District Court for the Southern District of New York held that imposing "primary liability under subsections (a) and (c) of Rule 10b–5 for a scheme based upon an alleged false statement … would render the rule announced in *Janus* meaningless." 817 F.Supp.2d at 344. In support of this argument, the Court in *Kelly* maintained that allowing claims under subsections (a) and (c) of Rule 10b–5 pursuant to *scheme liability* would improperly "blur the lines" between primary and secondary liability. *Id.* However, based on the rationale articulated in *Big Apple Consulting*, an Eleventh Circuit opinion issued after the *Kelly* decision, the Court does not find *Kelly* persuasive.

thereunder cannot be dismissed pursuant to Rules 9(b) or 12(b)(6).

### 3. The SEC sufficiently alleges fraud claims against Mr. Strebinger under Section 17(a) of the Securities Act

 In their motion to dismiss, Defendants argue that the elements of a claim under Section 17(a) of the Securities Act "are 'essentially the same' as the elements of a claim under Section 10(b) [of the Exchange Act] and Rule 10b–5" [Doc. No. 12–1, 31]. Based on these similarities, Defendants maintain that the SEC's fraud claims under Section 17(a) must also be dismissed pursuant to the aforementioned holdings articulated in *Cent. Bank of Denver, N.A.* and *Janus*. Specifically, Defendants maintain that the SEC fails to assert a viable claim under Section 17(a) because, based on the allegations within the complaint, "Mr. Strebinger cannot be viewed as having made any statements in reports that the Complaint itself alleges were written, paid for, and distributed by others" [*id.* at 33]. However, as the "maker" limitation articulated in *Janus* is not applicable to subsections (1), (2) and (3) of Section 17(a) of the Securities Act, Defendants' argument is without merit.

As articulated by the Eleventh Circuit, subsections (a) and (c) of Rule 10b–5 "are modeled" after the language within subsections (1) and (3) of Section 17(a) of the Securities Act. *Big Apple Consulting*, 783 F.3d at 796. Therefore, much like subsections (a) and (c) of Rule 10b–5, subsections (1) and (3) of Section 17(a) of the Securities Act "do not contain the word 'make' or address misstatements." *Id.* Without such restricting language, the "maker" limitation articulated in *Janus*, just like subsections (a) and (c) of Rule 10b–5, "did not concern section 17(a)(1) or (3)." *Monterosso*, 756 F.3d at 1334. More to the point, "given that the Court in *Janus* did not alter the potential for liability under Rule 10b–5(a) and (c), it would be incongruous

to remove the potential for liability under § 17(a)(1) and (3) [of the Securities Act]." *Big Apple Consulting*, 783 F.3d at 796.

 In comparison, subsection (2) of Section 17(a) is effectively "the analogue to Rule 10b–5(b)." *Id.* However, unlike Rule 10b–5(b), Section 17(a)(2) only makes it unlawful "to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made." 15 U.S.C. § 77q(a)(2). While prohibiting the acquisition of money through the "means of any untrue statement," Section 17(a)(2) does not make it unlawful "[t]o *make* any untrue statement of a material fact." 17 C.F.R. § 240.10b–5(b) (emphasis added). Based on this wording distinction, Section 17(a)(2) cannot be read to include the "maker" restriction present in Rule 10b–5(b). *See Big Apple Consulting*, 783 F.3d at 797 (stating that the "the [Supreme] Court's definition of 'to make' in Rule 10b–5 does not apply to § 17(a)(2)."); *see also United States v. Bean*, 537 U.S. 71, 76 n. 4, 123 S.Ct. 584, 154 L.Ed.2d 483 (2002) (Highlighting that, as a general rule, "[t]he use of different terms within related statutes generally implies that different meanings were intended." (citation omitted)). Therefore, as the maker restriction is not present, *"Janus's* limitation on primary liability under Rule 10b–5(b) does not apply to claims arising under Section 17(a)(2)." *Big Apple Consulting*, 783 F.3d at 797 (citation omitted).

In summary, the "maker" restriction articulated in *Janus* is not applicable to claims under Section 17(a) of the Securities Act. Accordingly, the Court will not dismiss the SEC's Section 17(a) claims against Mr. Strebinger.

### 4. The SEC sufficiently alleges an aiding and abetting claim against Mr. Strebinger

 Here, the SEC asserts a claim

against Mr. Strebinger [10] for aiding and abetting Mr. Chapman's alleged violations of Sections 10(b), 13(d), and 20(b) of the Exchange Act.[11] As a general rule, a claim for aiding and abetting violations of the Exchange Act is established when the following elements are met: "1) another party violated the securities laws; 2) the accused is generally aware of his role in the improper activity; and 3) the accused aider and abettor knowingly rendered substantial assistance." *U.S. SEC v. Surgilight, Inc.,* No. 6:02–CV–00431–GKS–KRS, 2002 WL 31619081, at *2 (M.D.Fla. Oct. 15, 2002) (citing 15 U.S.C. § 78t(e)).

In its complaint, similar to Mr. Strebinger, the SEC alleges that Mr. Chapman failed to file a Schedule 13D report [*id.* at 17], edited and otherwise provided information for the Cohen Report [*id.* at 25–26], and arranged the dissemination of the Wollstein Reports and the Cohen Report [*id.* at 28–30]. The SEC further alleges that Mr. Chapman, knowing the stock price had risen through a false or otherwise misleading promotional campaign, sold his stock in Americas through a Swiss financial institution [*id.* at 3]. In short, the SEC properly alleges that Mr. Chapman participated in the pump-and-dump scheme regarding Americas' stock. Additionally, the SEC alleges that Mr. Strebinger, through his own participation in this pump-and-dump scheme, "knowingly provided substantial assistance to Defendant [Mr.] Chapman's violations of Section 10(b), 13(d) and 20(b) of the Exchange Act" [Doc. No. 1, 50]. Therefore, the SEC's complaint sufficiently pleads an aiding and abetting claim against Mr. Strebinger.

In their motion to dismiss, Defendants argue that "apart from the Complaint's labels and conclusions, there are no facts to show that Mr. Strebinger substantially assisted the alleged fraud" [Doc. No. 12–1, 35]. However, in support of this argument, Defendants fail to discuss the complaint's allegations regarding Mr. Chapman's misconduct, or Mr. Strebinger's knowledge of the same. Without such discussion, Defendants' argument is little more than a conclusory assertion that the SEC's aiding and abetting claim against Mr. Strebinger fails to satisfy the particularity and plausibility pleading standards of Rules 9(b) and 8(a). Such an argument does not provide a sufficient basis to dismiss the SEC's aiding and abetting claim. Accordingly, at this stage of the litigation process, the Court will not dismiss the SEC's aiding and abetting claim against Mr. Strebinger.

### 5. The SEC sufficiently alleges a claim against Mr. Strebinger under Section 20(b) of the Exchange Act

Section 20(b) of the Exchange Act states "[i]t shall be unlawful for any person, directly or indirectly, to do any act or thing which it would be unlawful for such person to do under the provisions of this chapter or any rule or regulation thereunder through or by means of any other person." 15 U.S.C. § 78t(b).

As described *supra,* the SEC alleges that Mr. Strebinger *contributed* to the false or otherwise misleading information

---

**10.** Again, the SEC also alleges a corresponding claim that Mr. Chapman aided and abetted Mr. Strebinger's alleged securities violations.

**11.** In their motion to dismiss, Defendants argue that the SEC is unable to bring any "aiding and abetting claims under the Securities

Act" [Doc. No. 12–1, 34]. However, as the SEC correctly notes in its response brief, "the complaint does not allege an aiding and abetting claim under the Securities Act" [Doc. No. 14, 24]. Therefore, the Court does not need to address Defendants' argument regarding any potential limitation on an aiding and abetting claim under the Securities Act.

contained within the Wollstein Reports and the Cohen Report. However, in making this allegation, the SEC notes that Mr. Strebinger is not the author of these reports. Instead, the SEC alleges that Jarrett Wollstein was the "ostensible author" of the Wollstein Reports [Doc. No. 1, 19], and that the Cohen Report was actually drafted by "an 'analyst' in India ... in exchange for approximately $650" [id. at 25]. In essence, by highlighting his separation from the "authorship" of the Wollstein Reports and the Cohen Report, the SEC alleges that Mr. Strebinger used third parties to provide false information regarding Americas' stock. Based on this allegation, the SEC maintains that Mr. Strebinger violated Section 20(b) of the Exchange Act by committing fraud "through or by means of" other individuals.

In comparison to Section 20(b), Section 20(a) states:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable.

15 U.S.C. § 78t(a). Based on this language, caselaw and the clear language of this statute, establish that a "control" element exists for claims brought under Section 20(a) of the Exchange Act. See Laperriere v. Vesta Ins. Grp., Inc., 526 F.3d 715, 721 (11th Cir.2008) ("The text of section 20(a) [of the Exchange Act] unambiguously imposes derivative liability on persons that control primary violators of the Act.").

In their motion to dismiss, Defendants argue that, as a matter of law, the SEC's

Section 20(b) claim must be dismissed because its complaint fails to allege that Mr. Strebinger "controlled" the authors of the Wollstein Reports and the Cohen Report.[12] In short, Defendants argue that a claim under Section 20(b) contains the same "control" limitation applicable to claims under Section 20(a). However, "[t]here is a dearth of authority construing Section 20(b)." Janus, 131 S.Ct. at 2311 (Breyer, J., dissenting); see also Cohen v. Citibank, N.A., 954 F.Supp. 621, 630 (S.D.N.Y.1996) ("Few reported cases discuss the applicability of Section 20(b)."). Based on this limited caselaw, it is unclear whether or not a control element is applicable to claims brought under Section 20(b).

As noted in Defendants' brief in support of their motion to dismiss, at least one Circuit Court has held that "control" is a necessary element of a Section 20(b) claim. See SEC v. Coffey, 493 F.2d 1304, 1318 (6th Cir.1974). Specifically, in Coffey, the United States Court of Appeals for the Sixth Circuit held that, in order to establish a claim under Section 20(b), "there must be shown to have been knowing use of a controlled person by a controlling person." Id. In support of this holding, the Sixth Circuit elaborated that "[w]ithout such a restriction, every link in a chain of command would be personally criminally and civilly liable for the violations of inferior corporate agents. This was not the congressional intent in enacting section 20(b)." Id.

However, in considering the reasoning within the Janus decision and the clear language of the statute, the Court does not find the holding in Coffey persuasive. Again, the Janus decision limits liability under Rule 10b–5(b) to the "maker"

---

12. For purposes of section 20(a) analysis, "control" is defined by the SEC's regulations as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b–2.

of a fraudulent statement, meaning "the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." 131 S.Ct. at 2302. As a result of this limitation, "[o]ne who prepares or publishes a statement on behalf of another is not its maker" for purposes of Rule 10b5–(b) analysis. *Id.* Further, an individual who has a statement published on his behalf is not liable under Rule 10b–5(b) because "[w]ithout *control*, a person or entity can merely suggest what to say, not 'make' a statement in its own right." *Id.* (emphasis added). Therefore, pursuant to *Janus*, the use of a third party that makes a fraudulent statement does not support a claim under Rule 10b–5(b).

The SEC's claim, however, is not made under Rule 10b–5(b). Instead, it has been brought under Section 20(b). In articulating that such a claim under Rule 10b–5(b) cannot be maintained, the Supreme Court suggests in *Janus* that fraud perpetrated through the use of innocent third parties potentially supports a claim under Section 20(b). Specifically, the Supreme Court noted in a footnote that its holding in *Janus* does "not address whether Congress created liability for entities that act through innocent intermediaries in 15 U.S.C.A. § 78t(b)." *Id.* at 2304 n. 10. As noted by Justice Breyer in his dissenting opinion, this "footnote hints, that § 20(b) could provide a basis for liability in this case." *Id.* at 2311 (Breyer, J., dissenting).

■ The Court does not read Section 20(b) to contain a "control" limitation on liability. Such an interpretation of Section 20(b) makes logical sense, as it allows the SEC to pursue claims against individuals that perpetrate fraud through the use of non-culpable third parties. Permitting the SEC to exercise this authority appears consistent with the language of Section 20(b) which, unlike Section 20(a), does not contain any "control" limitations on deriva-

tive liability. More to the point, the Court construes Section 20(b) to reach factual scenarios not covered by the "control" liability limitations established under Section 20(a). To hold otherwise would suggest that Section 20(b), for the purposes of establishing derivative liability, is a mere duplicate of Section 20(a). The Court does not believe that such a result, which would effectively render Section 20(b) superfluous, is consistent with the intent behind the Exchange Act. *See Nunnally v. Equifax Info. Servs., LLC*, 451 F.3d 768, 773 (11th Cir.2006) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks and citation omitted).

■ Here, the facts alleged against Mr. Strebinger appear to be the exact scenario that Section 20(b) attempts to guard against. Specifically, the SEC does not allege that the authors of the Wollstein Reports and the Cohen Report were a part of the pump-and-dump scheme, or that they knew the information provided by Mr. Strebinger regarding Americas' stock was false or misleading. Further, as the SEC appears to concede in its response brief, Mr. Strebinger did not "control," as defined under the Exchange Act, the authors of the Wollstein Reports or the Cohen Report [Doc No. 14, 27]. Therefore, with respect to his conduct regarding the authors of the Wollstein Reports and the Cohen Report, the SEC cannot establish a claim under Section 20(a), or an aiding and abetting claim, against Mr. Strebinger. However, if in fact the SEC's allegations are true, Mr. Strebinger did use innocent third parties to perpetrate stock fraud. The Court does not believe Mr. Strebinger should be able to elude liability regarding such conduct simply because he did not

"control" these innocent third parties' conduct. Accordingly, the Court will not dismiss the SEC's Section 20(b) claim against Mr. Strebinger.

In summary, the SEC's complaint contains sufficient factual allegations to survive Defendants' motion to dismiss. Accordingly, Defendants' Motion to Dismiss [Doc. No. 12] is hereby **DENIED.**

## IV. *CONCLUSION*

For the above stated reasons, Defendants' Motion for Oral Argument [Doc. No. 20] is hereby **DENIED,** and Defendants' Motion to Dismiss [Doc. No. 12] is hereby **DENIED.**

IT IS SO ORDERED.