In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-2892

GREGORY KOGER,

*Plaintiff-Appellant,*

*v.*

THOMAS J. DART, Sheriff of Cook County, and COOK COUNTY, ILLINOIS,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 6361 — **Maria Valdez**, *Magistrate Judge.*

ARGUED FEBRUARY 20, 2020 — DECIDED FEBRUARY 25, 2020

Before BAUER, EASTERBROOK, and MANION, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* While he was confined in the Cook County Jail, Gregory Koger accumulated books in his cell. Eventually guards removed more than 30, relying on a policy that prisoners may not have more than three books or magazines at a time (excluding religious and legal materials, which do not count against the limit). A magistrate judge, presiding by consent under 28 U.S.C. §636(c), dismissed the

resulting suit without reaching the merits. In a prior decision we agreed with that ruling in part but remanded with instructions to resolve two claims on the merits: whether the policy is valid and whether Koger is entitled to compensation for the books he lost as a result of its enforcement. *Lyons v. Dart*, 901 F.3d 828 (7th Cir. 2018).

The magistrate judge then granted summary judgment to the defendants. She held that the three-book policy is valid under the First Amendment (applied to states via the Due Process Clause of the Fourteenth) and that it makes no difference whether the guards asked Koger which three books he wanted to keep or what the Jail did with the confiscated books, because his complaint does not articulate a due-process (or Takings Clause) theory. 2019 U.S. Dist. Lexis 106447 (N.D. Ill. June 26, 2019), reconsideration granted and original decision reaffirmed with additional reasoning, 2019 U.S. Dist. Lexis 152878 (N.D. Ill. Sept. 9, 2019). We start with Koger's contention that the three-book limit violates his right to freedom of speech, which defendants concede includes a right to read what other persons have spoken or written.

Cook County did not prevent Koger from receiving and reading books. He could receive as many and read as much as he wanted. Setting a cap on how many books could be in his cell at once did not hamper his reading—he does not say that he could read four books in a day, so his ability to send finished books home and obtain more in the mail from friends and family could support even a voracious reading habit. We know from *Turner v. Safley*, 482 U.S. 78 (1987), and *Overton v. Bazzetta*, 539 U.S. 126 (2003), that prisons have substantial discretion to manage their charges and that freedoms enjoyed by persons not in detention (such as the free-

dom to have extensive libraries) need not be available to those in custody. *Beard v. Banks*, 548 U.S. 521 (2006), applies this principle to conclude that prisons may deny some classes of inmates access to *any* reading matter. The Jail's three-books-at-a-time policy is much more favorable to inmates than the policy sustained in *Beard*. And Koger does not contend that the exclusion of religious and legal materials from the three-book limit is a form of content discrimination that spoils the Jail's policy.

Nonetheless, Koger insists, Cook County forfeited its ability to curtail the size of prisoners' in-cell collections by not enforcing its policy strictly enough. Allowing prisoners to accumulate books (recall that Koger amassed more than 30), demonstrates that the three-book restriction is unimportant to prison management. Or so the argument goes. *Turner*, *Overton*, and *Beard* give wardens substantial discretion to balance inmates' interests against the needs of security, but since lax enforcement demonstrates that the Jail's interests do not really support the policy, the inmate's interests must prevail, Koger insists.

Yet rules and regulations are never perfectly enforced. A federal statute prohibits felons from possessing firearms, but no one would say that if agents fail to arrest every felon in possession, or prosecutors decline to press charges against all arrested felons, this shows that the prohibition isn't important. It shows instead that enforcement is costly, and like all good things it will be pursued only to the extent that the benefits exceed the costs. Prison guards have many tasks in addition to removing excess books from inmates' cells, and some of those tasks—including confiscating drugs and weapons, preventing violence among the prisoners, and en-

suring that food, medicine, and emergency assistance are de-livered as needed—have higher priority. Not even Stalin's Gulag enforced all rules against all prisoners all the time. Stringent enforcement is not essential to establishing that given rules are reasonable.

Cook County advances, and the district court accepted, multiple reasons for the three-book policy. One is that books can be used to contain or exchange coded messages among prisoners, making it necessary to leaf through the pages when doing a property search. The more books a cell has, the more onerous this task. Another is that books may be hollowed out to hide drugs and other forbidden items, or that weapons such as razors or knives may be hidden in books' covers and spines. Curtailing the need for labor-intensive searches is a good reason for limiting the number of books in a cell. These considerations also show why the Jail did not adopt Koger's proposal to allow any books that fit within an inmate's property bag. Many items in the bag (the Jail permits roughly two cubic feet of clothes and goods, not counting shoes) are easy to assess for danger; not so with books. The Jail offers other reasons in support of its policy, but those we have mentioned suffice.

Although the three-book policy is valid, it does not follow that guards are free to throw confiscated books on a bonfire or otherwise dispose of them. Books are property, yet Koger was not asked whether he wanted them sent home or mailed to a friend. The prison could have charged Koger the mailing costs, see *Streckenbach v. VanDensen*, 868 F.3d 594 (7th Cir. 2017), but his books were destroyed without any option to send them outside the prison. Nor was Koger asked which three he wanted to keep.

The descriptions in this opinion track Koger's affidavits, which we must accept for now because he is the party opposing the Jail's motion for summary judgment. The magistrate judge wrote that Koger's affidavits are self-serving and would be disregarded unless corroborated. 2019 U.S. Dist. LEXIS 152878 at *10. For this proposition she relied on a statement in *Hall v. Bodine Electric Co.*, 276 F.3d 345, 354 (7th Cir. 2002), that was overruled by *Hill v. Tangherlini*, 724 F.3d 965, 967–68 & n.1 (7th Cir. 2013). We observed in *Hill* that most evidence can be called self-serving, but a witness's self-interest does not prevent a trier of fact from crediting a statement based on personal knowledge. Accord, e.g., *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003); *Sanders v. Melvin*, 873 F.3d 957 (7th Cir. 2017). It is regrettable that a district court should rely on an ill-considered comment that has been disavowed expressly and repeatedly.

The self-serving nature of Koger's factual assertions is not the only reason he lost. The magistrate judge added that the complaint's failure to mention the Due Process Clause meant that Koger could not collect damages to reflect the value of the lost books. 2019 U.S. Dist. LEXIS 106447 at *5. The judge recognized that *Johnson v. Shelby*, 574 U.S. 10 (2014), held that complaints need not set out legal theories, but she dismissed *Johnson* as irrelevant because defendants moved for summary judgment rather than to dismiss the complaint. This distinction eludes us. If as *Johnson* holds complaints need not plead law, then it does not matter whether the defendant moves to dismiss the complaint or for summary judgment; in either event, the fact that the complaint omits a legal theory cannot block a plaintiff from invoking that theory.

Complaints plead *grievances*, not legal theories, and Koger's complaint spelled out his grievance: the Jail confiscated his books and did not return them when he was released. What rule of law, if any, those acts violated, was a subject to be explored in other papers, such as motions, memoranda, and briefs. Koger initially relied only on the First Amendment but at later stages of the suit invoked the Due Process Clause too; he did not need to amend the complaint to do so.

Especially not when the district court *itself* injected the Due Process Clause into the case. The initial dismissal of the complaint was based in part on *Parratt v. Taylor*, 451 U.S. 527 (1981), which holds that the opportunity to sue in state court is all the process due for certain kinds of deprivations. Our first opinion explains why *Parratt* does not support dismissal, see 901 F.3d at 830, but the magistrate judge's reliance on *Parratt* shows a recognition that due-process interests were at stake whether or not the complaint laid them out. Having dismissed the suit once on due-process grounds, the district court should not have held on remand that due-process arguments cannot be considered at all.

Defendants make a different argument: that the books (in excess of three) were contraband, which public officials may seize and destroy without notice, hearings, or compensation. That proposition is far from clear: That public officials *call* something contraband does not make it so. For example, a statute may provide that a car used to transport cocaine may be confiscated, but that must be done through a forfeiture proceeding, after notice and an opportunity for a hearing. The car's owner may contend that it was not used to transport drugs, that someone else was responsible for any

drugs (cf. *Bennis v. Michigan*, 516 U.S. 442 (1996)), or that confiscation would be a constitutionally excessive fine (see *Timbs v. Indiana*, 139 S. Ct. 682 (2019)).

Trying to determine when hearings are required before the seizure or destruction of chattels that are properly called contraband (e.g., cocaine) is not necessary here, however, because books are not contraband. Illinois has adopted by statute a long list of items classified as contraband inside prisons. 720 ILCS 5/31A-0.1. Books are not on that list. *Excess* books may be a kind of contraband, but only while in the cell. Cook County acknowledges that Koger could have mailed the books home an hour before the search and that the outbound books would not have been seized and destroyed. This is what sets up his argument: that after finding too many books in his cell, the Jail should have (a) asked him which he wanted to keep, and (b) offered to store the remainder until his release or ship them if he would pay the costs. By destroying the books straightaway, Koger insists, the Jail exposed itself to damages equal to their value.

We have seen before, and rejected, an argument that items deemed contraband only because found in the wrong hands may be summarily destroyed. Agents seized more than 30 firearms from Leroy Miller in connection with his arrest for aiding and abetting a felon's unlawful possession of weapons. They missed the deadline for initiating forfeiture proceedings but contended that the weapons, as contraband, could be destroyed anyway. We disagreed, distinguishing Miller's possessory interest in the guns (forbidden) from his property interest (which continued). *United States v. Miller*, 588 F.3d 418 (7th Cir. 2009). Miller, as owner, remained free to sell the guns, have the guns sold for his ac-

count, or give them away, though new possessors could not hold them for Miller's future use. What was true of Miller is true of Koger too: he lost a possessory interest in the books by keeping too many in his cell, but he did not automatically lose his property interest. He was entitled to sell or ship the books, or reclaim them from the Jail at the end of his confinement.

This means that we must remand a second time. Cook County denies having a policy of destroying excess books. Proof of a policy is essential; it is not enough for Koger to show that his own books vanished. Koger has sued only the County, whose liability depends on proving that it implemented an unconstitutional policy. See *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). The Sheriff, sued in an official capacity, is just a proxy for the County. See *Will v. Michigan Department of State Police*, 491 U.S. 58 (1989). In addition to ascertaining the Jail's policy, the district court will need to decide what choices, if any, were offered to Koger when the guards discovered the excess books and what became of them; a bad policy would not lead to damages if it did not injure Koger. It may be necessary to resolve other questions as well—and any disputed issues of material fact are the province of a jury.

The judgment is affirmed to the extent that it finds the Jail's three-book policy consistent with the First Amendment but otherwise is vacated, and the case is remanded for further proceedings consistent with this opinion.